Lloyd E. McFall v. United States Tobacco Co., et al

5-4783                                             436 S.W. 2d 838

Opinion Delivered February 3, 1969

*Daily & Woods* for appellant.

*Warner, Warner, Ragon & Smith* for appellees.

J. Fred Jones, Justice.    This is a workmen's compensation case and involves the question of whether the statute of limitations had run on a claim at the time it was filed with the Commission.    A referee and the Commission held that it had.    The matter is before us on appeal by the claimant from a judgment of the Sebastian County Circuit Court affirming the order of the Commission.

We examine the usual compensation case for a determination of whether there is any substantial evidence to support the order or award of the Commission, but in this case we have examined the record for matters that would toll the statute, or estop the appellees from pleading it, and we have found none.

We consider the facts to be clear, that the appellant sustained an injury to his right knee while in the course of his employment as a salesman for United States Tobacco Company. The injury was sustained on April 9, 1963, in a collision between the employer's automobile, insured by Continental Casualty Company, and an automobile driven by Lawrence Edwards, insured by State Farm Mutual Insurance Company. Continental Casualty also carried the workmen's compensation insurance for the claimant's employer, and is an appellee, along with the employer, in this case. An independent adjustment company investigated the accident on behalf of Continental Casualty under the automobile liability policy, and rendered its report to Continental Casualty on May 16, 1963, stating: "The assured driver, Lloyd McFall, sustained a sore right knee and right ankle, however, has not required any medical treatment."

The claimant reported his injury to his employer and the employer's first report of industrial injury (A-8) was made out by the employer under date of May 13, 1963, showing that appellant had sustained a knee injury; that the probable length of disability was not known; that the appellant had returned to work and that the name of his physician was Dr. Wideman.

On September 30, 1963, Dr. John W. Wideman rendered final surgeon's report and bill on printed form to Continental Casualty showing two visits by the claimant on May 13 and June 17, 1963. Dr. Wideman's reported diagnosis is blurred on the form he filled out, but it appears to be "possible tear of the medial meniscue and strain of its attachment to the ligament." Dr. Wide-

man reported that he recommended conservative treatment; that appellant was told not to squat or run; that appellant was improved and pronounced as able to return to work; that no time was lost from work as far as Dr. Wideman knew and he anticipated no permanent injury. Dr. Wideman stated his bill for services as $22.50.

Continental Casualty paid Dr. Wideman's bill and filed final report with the Commission on noncompensable injury form A-10, which was stamped "received on October 15, 1963." The record does not reveal whether the appellant received a copy of this form, A-10, but at the bottom of the form is printed the following paragraph:

"Note to Injured Employee: This is a copy of a report furnished us by your employer or his insurance carrier relating the above information regarding your injury. As your disability extended for a period of less than seven days, you are entitled to no compensation. The above medical benefits have been provided for you and paid for by your employer, however, in accordance with the provisions of the Arkansas Workmen's Compensation Law. If there is any substantial error in this report, please notify the undersigned."

Doctor Wideman was recommended to the appellant by a claims representative for State Farm Mutual Insurance Company, Mr. Edwards' liability insurance carrier, and the appellant went to Dr. Wideman on his own initiative. The appellant returned to Dr. Wideman on March 9, 1964, and a report of this visit was sent by Dr. Wideman to State Farm Mutual Insurance Co. The appellees received no copy of this report and received no request for payment for this examination. On August 28, 1964, the appellant went to Dr. Hathcock of the Holt-Krock Clinic on his own initiative and made return visits on January 8, January 23, and May 12.

1965.   The appellant terminated his employment with the appellee tobacco company on November 12, 1965. He was again seen by Dr. Hathcock on February 17 and June 29, 1966, and a torn cartilage was surgically removed from appellant's knee by Dr. Hathcock on July 7, 1966.   Claim was filed with the Workmen's Compensation Commission for medical expenses, as well as temporary and permanent partial disability on October 21, 1966.

The crux of appellant's contention is set out in his points relied on for reversal, as follows:

"No period of longer than one year intervened between visits to and treatment by Drs. Wideman or Hathcock, and said treatment amounted to 'compensation' within the meaning of the Workmen's Compensation Act.

The employer's payment of the claimant's salary while he was disabled as a result of his occupational injury was in lieu of compensation or constituted 'compensation' within the meaning of the Workmen's Compensation Act.

By their conduct, the respondents have waived the filing of a claim, within the statutory period, or they are estopped to assert such Statute of Limitations."

In effect, the appellant earnestly contends that this court should go further than it has heretofore gone in considering medical treatment and the payment of wages as payment of compensation for the purpose of extending the time, or tolling the statute of limitations, for filing claims with the Commission in workmen's compensation cases.   The appellant cites numerous cases, of respectable authority, in support of his contention, but they are distinguishable on the facts from the case at bar.

The appellant is correct in his statement that we are committed to the rule under *Reynolds Metal Co.* v. *Brumley,* 226 Ark. 388, 290 S.W. 2d 211, "that where an employer furnishes an injured employee medical services, this constitutes a payment of compensation or a waiver which suspends the running of the time for filing a claim for compensation." The keystone to this rule is the two words *"employer furnishes."* We have never held that medical services furnished by any-one *other* than the employer or his compensation insur-ance carrier, constitute payment of compensation or a waiver which suspends the running of the time for filing a claim for compensation. We are unable to see how an employer could *furnish* medical treatment without knowing, and without reason to know, that he is doing so.

The appellant testified as follows:

"Q. Now then, did you see Dr. Wideman after June of 1963?

A. I'm not sure about that. I know I did see Dr. Wideman on three occasions.

Q. As a matter of fact, in March of 1964 at the request of Jack Chancey didn't you go back and see him and he submitted a report to Jack Chancey on the State Farm Mutual Insurance Company?

A. Jack Chancey was the one that had recom-mended Dr. Wideman to start with.

Q. Jack Chancey is the claims representative for the insurance carrier of the adverse vehicle, the one you had the collision with, was he not?

A. I believe that's correct.

\* \* \*

Q. Now then, you say you went to Dr. Wideman on those three occasions and then it was in August or September of 1964, before you went to Dr. Hathcock. Is that correct?

A. Yes.

Q. Who told you to go to Dr. Hathcock?

A. Well, I don't recall anybody—

Q. Mr. McGowan or United States Tobacco or Continental Casualty did not tell you to go to Dr. Hathcock, did they?

A. No.

\* \* \*

Q. Well, why did you go to Dr. Hathcock?

A. I wasn't satisfied with the finding of Dr. Wideman. I was still having trouble with my knee, it was getting worse, and I felt that I should see another doctor.

Q. Now are you still under the care of Dr. Hathcock?

A. Yes.

Q. Have you been under the care of Dr. Hathcock continuously since you went to him on the first occasion up to the present time?

A. Yes.

\* \* \*

Q. At the time you terminated from United States Tobacco in November, 1965, was anything said about any workmen's compensation benefits or the medical bills of Dr. Wideman? Did you make any demand upon United States Tobacco, Mr. McGowan or Continental Casualty Company for payment of any compensation benefits or medical bills that had been incurred?

A. No, I hadn't.''

Mr. J. R. McGowan, appellant's supervisor while he was employed by the appellee tobacco company, testified, in part, as follows:

''Q. Did he [appellant] ever complain to you about his knee?

A. On making of daily reports I'm sure that he may have referred to the reason for losing time was due to that but I couldn't say exactly. I knew that he lost time, but for what reason I wasn't positive.

Q. Were you aware of the fact that he was still going to a doctor for his knee?

A. Not necessarily for a knee. I knew that he was going to a doctor. I didn't know for what, our reports indicated that that's what he had done.

\* \* \*

Q. Mr. McGowan, were you aware that Mr. McFall was still having difficulty with his knee when he left United States Tobacco Company in November, 1965?

A. No.

Q. He was not saying anything to you about it at that time?

A. It wasn't mentioned.

Q. I'm not talking about a claim against United States Tobacco Company.

MR. SMITH: He understands the question.

Q. Were you aware of the fact that he was still having difficulty with his knee?

A. No.''

The appellant, as well as appellant's former supervisor, testified that the appellant lost about thirty days from his work between the date of his injury on April 9, 1963, and his termination on November 12, 1965; that a part of this loss was occasioned by the knee injury and a part for other reasons and purposes. On this point, a part of the appellant's testimony is as follows:

"Q. Now then, during that period of time you continued to work for the United States Tobacco Company up until your separation in November of '65. Is that correct?

A. Yes.

Q. You say you missed thirty-three days. Can you tell us what thirty-three days you missed?

A. No, I couldn't off hand.

Q. You have no way of determining it?

A. I have no way of determining it.

Q. That's just a guess, isn't it?

A. It would be a rough estimate, yes.

Q. You missed work for several reasons during that period of time, did you not?

A. Well, yes, I missed work for several reasons.

Q. Prior to this accident you missed work for several reasons, did you not?

A. Yes.

Q. Illness, death in the family?

A. Yes.

\* \* \*

Q. And you made no demands for any compensation benefits or weekly compensation benefits

at any time while you worked for United States Tobacco Company?

A. No.

Q. And you have no way—it could have been twenty days you missed, it could have been forty days you missed?

A. I have no record of the days.

Q. Did you miss any days by reason of—I believe you have testified you missed days for other reasons. Matter of fact, your Father was killed during this period of time?

A. Yes.

Q. Did you have any other illnesses?

A. I had come down with the 'Flu on occasions and I'd had Pneumonia once and had a relapse on that.

Q. During these times they continued to pay your salary?

A. Yes.

Q. It was in the nature of sick leave then?

A. You could say that, yes."

Arkansas Statutes Annotated § 81-1318 (a) (b) (Repl. 1960) provides in part as follows:

"(a) (1) A claim for compensation for disability on account of an injury (other than an occupational disease and occupational infection) shall be barred unless filed with the Commission within two [2] years from the date of the accident. * * *

(b) In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed

with the Commission within one [1] year from the date of the last payment of compensation, or two [2] years from the date of accident, which ever is greater."

The appellant filed suit in the Sebastian County Circuit Court, apparently in 1966, for personal injuries against the third party tort feasor, and the employer joined as party plaintiff in that suit, not for subrogation under Ark. Stat. Ann. § 81-1340 (b) (Repl. 1960), but for the property damage to its automobile the appellant was driving at the time of his injury.

The appellant did absolutely nothing of an affirmative nature toward claiming compensation benefits as a result of his injury between the date of his injury on April 9, 1963, and the filing of the claim by his attorney on October 21, 1966. There is no evidence that he ever consulted an attorney until the suit was filed in circuit court. The claimant selected his own doctor, recommended to him not by his employer or its compensation insurance carrier, but by the claims representative of the insurance company for the third party tort feasor. When the appellant became dissatisfied with this doctor's diagnosis and service, he obtained other medical advice, treatment and surgery, without the advice, or recommendation, and so far as the record shows, without the knowledge or consent of anyone other than himself. He had worked as salesman for the Sunshine Buscuit Co. about three and one-half months prior to his surgery.

Doctor Wideman submitted his final report and bill for services on September 30, 1963, stating that he had not seen the appellant since June 17, 1963 (a period of more than three months), and that so far as he knew the appellant had lost no time from work. Appellant's subsequent visit to Dr. Wideman on March 6, 1964, was nine months after the last visit and over five months after Dr. Wideman's final report and bill. On March 9, three days after this last examination, Dr. Wideman

reported to State Farm Mutual Automobile Insurance Company (whose representative had recommended Dr. Wideman to the appellant in the first place) that he had re-examined the appellant on March 6, 1964, and this report was closed with the statement "I hope that this information fulfills your needs. If I can be of any further help, please do not hesitate to call on me." This report itself would indicate that appellees did not furnish Dr. Wideman's services on March 6, 1964.

The subsequent medical treatment and surgery at the Holt-Krock Clinic was further from being furnished by appellees than was Dr. Wideman's examination of March 6, 1964, and could in no sense be considered payment of compensation.

Appellees voluntarily paid Dr. Wideman for the medical service rendered the appellant on May 13 and June 17, 1963, and thereby created the unrefuted presumption that they "furnished" the medical treatment on those dates. We adhere to our former rule that the treatments thus furnished constituted the payment of compensation, and we hold that the statutory period of limitation for filing a claim with the Commission for additional compensation started running from June 17 1963. *Reynolds Metal Co.* v. *Brumley, supra,* and *Heflin* v. *Pepsi Cola Bottling Co., et al,* 244 Ark. 195, 424 S.W. 2d 365.

As to appellant's lost time and the payment of wages following his injury and prior to termination, the evidence is vague and indefinite as to the dates appellant lost time from his work and as to the total amount of time he lost because of his injury. The appellant was paid full time for the days he was off work for any reason at all and he was supposed to make the lost time up if he could. It was a company policy. There is no evidence in the record that the appellant or the appellees considered such payment as compensation or as payments in lieu of compensation, all the evidence is to the

contrary. We adopt the majority view as announced by Larson, Workmen's Compensation Law, Vol. 2, Voluntary Payment of Compensation, § 78.43 (c), pages 272, 273, where it is said:

> ". . . [T]he majority view apparently is that payment of wages to a disabled worker does not toll the statute unless the employer is aware or should be aware that it constitutes payment of compensation for the injury. * * *
>
> When the employee actually earns his wages by performing his regular duties after the injury, the presumption is that the wages are being paid for value received, and not in lieu of compensation."

The appellant recognized his need for medical treatment and procured the advice and services of two doctors. Unfortunately he did not recognize his need for legal advice and failed to consult a lawyer until after the statute of limitations had run on his claim. We recognize this case as a good example of why workmen's compensation acts are, and should be, liberally construed in favor of claimants, but we can find nothing in the facts of this case to toll the statute beyond June 17, 1963, and there simply is nothing in the law that permits us to extend the statute of limitations beyond the period fixed by statute. The judgment of the trial court is therefore affirmed.

Affirmed.