## SUPERIOR FEDERAL SAVINGS &
## LOAN ASSOCIATION et al *v.* Louise SHELBY

78-297                                    580 S.W. 2d 201

Opinion delivered April 30, 1979
(In Banc)

*Shaw & Ledbetter,* for appellants.

*Rex M. Terry,* for appellee.

GEORGE ROSE SMITH, Justice. This is a claim filed by the appellee for additional compensation under the workers' compensation law. The employer and its insurance carrier resisted the claim on the ground that it was not filed within one year after the last payment of compensation and was therefore barred by limitations. Ark. Stat. Ann. § 81-1318 (b) (Repl. 1976). The Commission rejected the plea of limitations, finding that compensation had been furnished by the carrier to the claimant, in the form of medical treatments, within less than a year before the claim was filed. We find no substantial evidence to support that conclusion and therefore

reverse the circuit court's judgment affirming the award and dismiss the claim.

The facts are not in dispute. Mrs. Shelby suffered a back injury in the course of her employment on February 14, 1975. She lost no time from work, but she was treated from time to time by Dr. Seubold, a chiropractor of her own choosing. On July 31, 1975, Dr. Seubold submitted a bill for $204, which was accompanied by a final report that the patient was asymptomatic and no longer under the doctor's care. The carrier paid that bill on August 25, 1975.

Dr. Seubold, also on August 25, realized that he had made a mistake in considering the case to be closed and directed his secretary to telephone the insurance carrier to keep the file open. In response to that call the carrier, on August 26, sent a printed questionnaire to Dr. Seubold, requesting a final report and asking for specific information, including this question: "Is the employee still under your treatment? Yes ____ No ____."

Dr. Seubold ignored the questionnaire and in fact did not communicate with the carrier for over 17 months. He did, however, continue to treat Mrs. Shelby. He sent his monthly bills to her and, when she expressed concern about their not having been paid, assured her that the insurance company would pay them. Finally, on February 8, 1977, Dr. Seubold submitted a bill for $405 to the carrier, for medical services consisting primarily of 42 spinal manipulations effected between July 28, 1975, and January 17, 1977. The Commission expressly found that Dr. Seubold was in error in waiting until February of 1977 to send his bill to the insurer, and the doctor testified himself that he had been at fault.

The actual claim now in issue was not filed with the Commission until July 7, 1977. The Commission, in holding that the statute of limitations had not run, relied upon the carrier's request, made on August 25, 1975, that Dr. Seubold file a final report. The Commission went on to say: "The requested final report was never filed, clearly indicating to all concerned that the claimant was still being treated by Dr. Seubold. Yet, the carrier, acting on the previously retracted 'final report,' purportedly 'closed the file' and now takes the

position that they were unaware of continuing medical treatment at the hands of Dr. Seubold." There is actually no testimony whatever that the carrier knew that Dr. Seubold was continuing to treat the claimant after the secretary's telephone call on August 25, 1975. The carrier simply had no information one way or the other.

The Commission's reasoning, which puts the burden on the carrier to find out whether medical treatments are continuing, misconceives the nature of a statute of limitations. The burden is, rather, on the claimant to act within the time allowed. What we said in a similar situation in *Phillips* v. *Bray*, 234 Ark. 190, 351 S.W. 2d 147 (1961), is pertinent:

> No one can reasonably contend that a doctor could, by carelessness or connivance, keep the case in suspense for an unlimited time by merely failing to present his bill to the Commission. It seems perfectly obvious that the primary purpose of the one year statute of limitations is to give the claimant that much extra time to decide whether he has been fully compensated for his injury, and not for the purpose of paying belated medical bills.

The one-year statute governing claims for additional compensation runs from the last "payment of compensation," which we have held to mean the *furnishing* of medical services. *Heflin* v. *Pepsi Cola Bottling Co.*, 244 Ark. 195, 424 S.W. 2d 365 (1968). Thus the Commission's reasoning asserts that in this case the carrier was actually furnishing medical services to the claimant, even though the carrier had merely inquired whether the employee was still under treatment and had no actual knowledge that any medical services were being provided. As we said in *Phillips* v. *Bray, supra,* such an interpretation amounts to a nullification of the one-year statute of limitations. We conclude that the statute was permitted to run in the case at bar, not as a result of any action on the part of the carrier but solely as a result of the failure of the claimant or her doctor to file a claim within the time allowed.

Reversed and dismissed.

HICKMAN, J., concurs.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. I agree with the majority decision. However, it is my opinion that the claimant was blameless. She inquired of her doctor about the bills, expressing concern. According to her testimony, the doctor told her not to worry, that the bills would be paid by the Workers' Compensation insurance.

The doctor admitted that he was at fault in sending to the appellant the final report; he failed to cause intermediate reports to be filed with the appellant; he failed for almost a year to return the form to the appellant that would have clarified his error. The charges were permitted to accumulate to almost double the amount of the first bill before the company was notified of the continuing services.

Since the claimant was blameless, as well as the appellant, that leaves the doctor as solely responsible for the error — an error which should not work to the financial prejudice of the claimant. I presume that will be the case, but I feel strongly enough about the matter to emphasize the question of fault for the benefit of all concerned.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority because of my interpretation of the facts. I agree that appellants have accurately stated the law as has the majority of this Court. I think the Commission properly applied the facts to the law when it held the carrier was on notice that appellant was still being treated for the admitted compensable injury.

The majority fail to point out that after the appellant received notice that appellee was still being treated and sent the request for additional information their file was improperly closed and thereafter there was nothing in their office to show the appellee was still being treated.

If Dr. Seubold was negligent in not forwarding interim reports it is certainly negligence on the part of appellant to fail to follow up. Simply because the carrier and the doctor failed to do their duties it is unfair to cause appellee to suffer the consequence of their combined negligence. It is normal

for an injured employee to assume the matter is being properly handled when she reports the injury and obtains medical services which are paid by the carrier. The average worker is unaware that a formal claim must be filed in order to preserve her rights when she has been informed the case has been accepted as compensable and payments have been made on her behalf.

Perhaps there is something missing in our law if a claim may be legally denied because a formal claim was not filed on a particular date. Maybe the filing of notice and having it accepted or denied should be treated as sufficient notice of the claim. Whether this is a good idea is not up to this Court to decide. There is no such provision under the present law.

I believe the facts in this particular case fit the decision in *Reynolds Metals Company* v. *Brumley*, 226 Ark. 388, 290 S.W. 2d 211 (1956). We therein stated:

> "This holding follows the general rule that where an employer or his insurance carrier has furnished an injured employee medical and hospital services, this constitutes the payment of compensation or a waiver which suspends the running of the time for filing a claim for compensation."

It is not in keeping with the intent of the Worker's Compensation Act, nor in the public interest, to allow an employer to accept a claim and pay benefits for medical services furnished to an injured employee and then close the file and do nothing until the statute runs and then deny the balance of the claim. Under the majority opinion, a carrier could receive medical bills and reports and file them away, or destroy them, and then rely on the statute of limitation to defeat a just and fair claim.

I would hold that appellant had tolled the statute by accepting the claim and then closing it without even so much as a telephone call to the doctor who they knew was treating the injured employee. The last communication the appellant had with Dr. Seubold was that the appellee was still receiving treatment. They should have known there was at least an outstanding bill. In fact, they did receive another bill before the

statute ran but did not pay it. The appellant suddenly became aware of everything as soon as limitations had expired.

I see no need to furnish additional citations in support of my position in view of the majority opinion.