Katherene SEAWRIGHT v. SEAWRIGHT SUPER SAVER and UNITED STATES FIDELITY & GUARANTY COMPANY

CA 80-383                              613 S.W. 2d 102

Court of Appeals of Arkansas
Opinion delivered March 11, 1981
[Rehearing denied April 15, 1981.]

*Frederick S. "Rick" Spencer*, for appellant.

*Harkey, Walmsley & Belew*, by: *Bill H. Walmsley*, for appellees.

Donald Corbin, Judge. The appellant, Katherene Seawright, appeals from a decision by the Arkansas Workers' Compensation Commission dismissing her claim for benefits. The Commission held that the statute of limitations has run before the claim was filed with the Workers' Compensation Commission.

The appellant sustained a compensable injury on January 20, 1976, while employed by her husband at Seawright Super Saver. The insurance carrier paid a total of $782.00 to a chiropractor, Dr. Richard L. Byrd, for medical treatment rendered to the claimant between the date of the injury and July 8, 1977. No other benefits were paid by the

carrier. On October 24, 1978, the Arkansas Workers' Compensation Commission received its first notice of a claim for additional benefits in a letter from the appellant's attorney dated October 20, 1978. This letter contained a copy of a letter from the appellant's attorney dated June 23, 1978, which set out in detail the facts and circumstances surrounding appellant's injury and the specific benefits being sought. The Commission responded to the notice of claim by letter dated October 27, 1978. It contained the following blind post script to the appellant's attorney: "We have no record of receiving your 6/23/78 letter until receipt of your 10/20/78 letter."

David Fleming, an adjuster for the insurance company, testified that his first knowledge of a claim for additional benefits was receipt of notice of claim for benefits on October 26, 1978.

The claimant offered proof of mailing to the Workers' Compensation Commission a June 23, 1978, letter constituting the claim as well as a receipt of a copy of the same by the claimant. The administrative law judge found that the first notice of a claim for additional benefits was received by the Commission on October 24, 1978, but that the appellee insurance company was estopped from asserting the statute of limitations as a defense in this case. On appeal to the full Commission, the decision of the administrative law judge was reversed and the claim was dismissed as barred by the statute of limitations.

Appellant raises five points for reversal. The first concerns the application of Ark. Stat. Ann. § 81-1318(b) (Repl. 1976) which provides:

> Additional compensation. In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the Commission within one [1] year from the date of the last payment of compensation, or two [2] years from the date of the injury, whichever is greater.

The burden to act within the period of limitations is placed upon the claimant and it is not an excuse to say it is the fault of the postal service or of the Commission that the filing was not effectuated. See *Superior Federal Savings and Loan Association* v. *Shelby*, 265 Ark. 599, 580 S.W. 2d 201 (1979).

There is substantial evidence to support the Commission's finding that appellant failed to file within the time prescribed. The evidence submitted by the appellant goes to the proof of mailing of the claim but not to the proof of filing. The Arkansas Supreme Court stated in *McFall* v. *United States Tobacco Co.*, 246 Ark. 43, 436 S.W. 2d 838 (1969), that ". . . there simply is nothing in the law that permits us to extend the statute of limitations beyond the period fixed by statute." If there is an inequity here it is better addressed by the Arkansas General Assembly. In *Miller* v. *Everett*, 252 Ark. 824, 481 S.W. 2d 335 (1972), the court said: "The statute of limitations applies with full force to the most meritorious claims, and the court cannot refuse to give the statute effect merely because it seems to operate harshly in a case involving an obviously meritorious claim."

The second point for reversal involves the question of whether the employer furnished medical services so as to toll the statute. No evidence was submitted on this issue so we decline to consider it.

Appellant raises as a third point that the appellee insurance carrier should be estopped from raising the statute of limitations as a bar to appellant's claim. There is nothing in the record to show that the appellee insurance carrier, because of something it had done or failed to do, caused the appellant to fail to timely file her claim with the Arkansas Workers' Compensation Commission. See 28 Am. Jur. 2d *Estoppel and Waiver* § 27 at page 627.

Appellant's fourth point for reversal is that the Commission abused its discretion when it denied appellant's motion to remand the case for further evidence. The appellant filed an affidavit on May 28, 1980, the date of the hearing before the full Commission. Rule 14 of the Arkansas

Workers' Compensation Commission provides in part:

> All oral evidence or documentary evidence shall be presented to the designated representative of the Commission at the initial hearing on a controverted claim, which evidence shall be stenographically reported. Each party shall present all evidence at the initial hearing. Further hearings for the purpose of introducing additional evidence will be granted only at the discretion of the hearing officer or Commission.

We find that the Commission did not abuse its discretion. The affiant was present at the hearing before the administrative law judge on November 30, 1979, and could have presented her evidence at that time.

Appellant's fifth argument concerns the constitutionality of the application of Ark. Stat. Ann. § 81-1318(b) and is without merit. See *Hagger* v. *Wortz Biscuit Co.*, 210 Ark. 318, 196 S.W. 2d 1 (1946). Every requirement of due process was accorded the appellant pursuant to the provisions of Ark. Stat. Ann. § 81-1318 (b).

We hold that there is substantial evidence to support the findings and decision of the Commission. Therefore we affirm.

Affirmed.

CLONINGER, GLAZE and COOPER, JJ., dissent.

TOM GLAZE, Judge, dissenting. I disagree with the decision reached by the majority. My disagreement is based on the actions of the adjuster for the appellee insurance carrier and the circumstances surrounding his relationship with the claimant. Shortly after claimant's injury, the adjuster investigated and subsequently determined that the injury was compensable and advised her that he would pay benefits. Although claimant earned a weekly wage of $92.00, she was never paid any temporary disability, mileage to and from the treating doctor who was located in another city or any other benefits under Sections 10 and 11 of the Workers'

Compensation Act. There is no explanation given as to why these benefits were never paid the claimant. The record is devoid of any discussion between the adjuster and the claimant concerning these possible benefits even though eight months after the injury the claimant's treating doctor informed the appellee that the claimant's injury was permanent. The only benefits paid by the insurance carrier were in the form of fees paid to the doctor.

The appellant contends that the appellee insurance carrier should be estopped to raise the statute of limitations because of the conduct of its adjuster. I heartily agree. Appellant relies in part on the case of *Buena Ventura Gardens* v. *Workers' Compensation Appeal Board*, 49 Cal. App. 3d 410, 122 Cal. Rptr. 714 (1975). The California Court of Appeals found that the employer and its insurance carrier had knowledge that the claimant's injury was probably permanent, and that it was conceivably work related. It then held that the employer and insurance carrier could not raise the statute of limitations as a defense to the claim since the claimant had been ignorant of her rights of which the employer and carrier had a duty to advise her. The *Buena Ventura Gardens* decision was actually premised on various provisions contained in the California Labor Code and an earlier decision by the California Supreme Court which held that these provisions placed an affirmative duty on the employer to notify the claimant that he may have a claim for Workers' Compensation benefits. *Reynolds* v. *Workmen's Compensation Appeals Board*, 12 Cal. 3d 726, 527 P. 2d 631 (1974).

The case at bar is strikingly similar to the facts and issues with which the court in *Buena Ventura Gardens* was confronted. The equities in this cause dictate that we should adopt the principle of law enunciated in *Buena Ventura Gardens* and *Reynolds*.

The Arkansas Workers' Compensation Act in clear and simple language provides what is expected of all parties when a compensable injury is involved. First, the insurance carrier shares equally with the employer the duties imposed

by the Act pursuant to Section 37 which in pertinent part provides:

> ... in order that the administration of this Act in respect of such liability may be facilitated, *the Commission shall by regulation provide for the discharge by the carrier, for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this Act upon the employer*, as it considers proper in order to effectuate the provisions of this Act. For such purpose (1) notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier; (2) jurisdiction over the employer by the Commission or by any Court under this Act shall be jurisdiction over the carrier; and (3) any requirements by the Commission or any Court under any compensation order, finding or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer. [Emphasis supplied.]

Next, since we in the instant case are considering an admitted compensable injury, we must also note the duties imposed on the employer and insurance carrier under Sections 10, 11 and 19 of the Arkansas Workers' Compensation Act which in relevant part provide:

SECTION 10.

(a) *Disability.* Compensation to the injured employee shall not be allowed for the first seven (7) days disability resulting from the injury, excluding the day of injury. *If a disability extends beyond that period, compensation shall commence with the ninth (9th) day of disability. If the disability extends for a period of two (2) weeks, compensation shall be allowed beginning the first day of disability, excluding the day of injury.* [Emphasis supplied.]

Compensation payable to an injured employee for disability shall not exceed sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly

wage, with a fifteen dollar ( $15.00) per week minimum,
. . . .

SECTION 11.

*The employer shall promptly provide for an injured employee such medical, surgical, hospital, and nursing services, and medicine, crutches, artificial limbs and other apparatus as may be reasonably necessary for the treatment of the injury received by the employee.* If the employer fails to provide the services or things mentioned in the foregoing sentence within a reasonable time after knowledge of the injury, the Commission may direct that the injured employee obtain such service or thing at the expense of the employer, and any emergency treatment afforded the injured employee shall be at the expense of the employer. [Emphasis supplied.]

SECTION 19.

(a) *Compensation shall be paid directly to the person entitled thereto* without an award, *except in those cases where liability has been controverted by the employer*
. . . .

(b) *The first installment of compensation shall become due on the fifteenth (15th) day after the employer has notice of the injury or death*, as provided in Section 17, on which date all compensation then accrued shall be paid. Thereafter compensation shall be paid every two weeks except where the Commission directs that installment payments be made at other periods.

(c) *Upon making the first payment and upon suspension of payment of compensation the employer shall notify the Commission of such fact on a form prescribed by the Commission.*

(d) Each employer desiring to controvert the right to compensation shall file with the Commission, on or before the fifteenth (15th) day following notice of the

alleged injury or death, a statement on a form prescribed by the Commission that the right to compensation is controverted .... [Emphasis supplied.]

The above provisions of our Workers' Compensation Act place a duty on the employer and insurance carrier to pay benefits if there is a compensable injury. The evidence in the record before us clearly reflects that after her injury, the claimant was unable to work. In fact, the doctor's report indicates that he had not planned to release the claimant until July 8, 1977, approximately eighteen months after her injury. I strongly believe that the adjuster and the insurance carrier had a duty under Arkansas law to either pay the benefits required under Sections 11 and 19 or notify the Commission that the employee's claim was controverted. If the adjuster had taken this forthright action during one of his many contacts with the claimant, I am convinced the statute of limitations issue the carrier raises would have never occurred. Instead, the claimant was never informed of her possible entitlement under the Workers' Compensation Act, and it seems patently unfair to permit the adjuster and his carrier to now take advantage of a situation they helped to create. I would hold that under the circumstances described in this case, the insurance carrier should not be permitted to raise the defense of the statute of limitations to defeat the employee's claim. Therefore, I would reverse and remand.

I am authorized to add that Cloninger and Cooper, JJ., join in this dissent.