ELECTRO-AIR *v.* Betty VILLINES

CA 85-158                                    697 S.W.2d 932

Court of Appeals of Arkansas
Division I
Opinion delivered October 16, 1985
[Supplemental opinion on Rehearing delivered
December 11, 1985]

*Harkey, Walmsley, Belew & Blankenship*, by: *Bill H. Walmsley*, for appellant.

*Pinson & Reeves*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from the Workers' Compensation Commission. The employee sprained her ankle as the result of a fall in her employer's parking lot. From this injury, which was stipulated as compensable, the employee developed a rare condition known as reflex sympathetic dystrophy.

According to the evidence, this condition was first described by doctors during the Civil War in patients who had received trauma to an extremity and suffered pain which was completely out of proportion in its severity to the degree of the trauma received. It begins as a burning or stinging pain and progresses to a constant, unrelenting cutting pain. It spreads to the entire extremity and is intensified by movement. The skin is extremely tender, especially around joints, and the pain is so excruciating that patients sometimes request amputation and consider suicide. As the condition progresses, demineralization of the bone leads to severe osteoporosis and eventually the extremity becomes non-functional because of the severity of pain caused by movement. As a result of the condition, patients commonly develop psychological problems such as depression and anxiety.

The employee in this case developed this condition in her right leg. In addition, she suffered pain, swelling, stiffness, sweating and loss of hair on her other extremities. Characteristically the condition has been confined to the extremity trauma-

tized and the employee's doctors had no explanation for her extensive symptoms although they accepted them as genuine and did not feel she was malingering.

The employee's doctors, Dr. Charles A. Ledbetter, an orthopedist, and Dr. Warren C. Boop, Jr., a neurologist, agreed she had reached maximum healing by July 2, 1982, and that her condition would progressively worsen. She then began treatments with Dr. Donald Butts, a psychiatrist, for management of the psychological side effects of her condition and petitioned the commission for a change of physicians. The administrative law judge held that her healing period ended July 2, 1982; that she had a 20% permanent partial disability to her right foot; that she was entitled to a change of physicians; that she was currently totally disabled as a result of her compensable injury and that the employer had controverted all permanent disability benefits in excess of the 20% scheduled injury to the right foot. The commission affirmed, but modified the law judge's decision to reflect the change of physician effective as of the date of the law judge's opinion. The employer challenges each of these holdings on appeal.

First, appellant argues that the appellee was not entitled to a change of physician to Dr. Donald Butts at the appellant's expense because the appellee attempted to obtain a retroactive approval of a change of physician. In support of this argument, appellant relies on *American Transportation Company* v. *Payne*, 10 Ark. App. 56, 661 S.W.2d 418 (1983), in which we held that the commission did not have the authority to retroactively approve a change of physicians. Appellant contends the commission has violated the intent of that ruling even though it attempted to comply by holding the change of physician effective only after the date of the law judge's opinion. Appellant maintains that to change physicians when the employer has selected the original physician, the claimant must follow a detailed procedure set out in the statute and that failure to do so negates the employer's responsibility.

The record discloses, however, that it was appellant who failed to comply with the mandates of the statute. Ark. Stat. Ann. § 81-1311 (Supp. 1983) provides in pertinent part:

After being notified of an injury, the employer or insurance

carrier shall deliver to the employee, in person or by certified or registered mail, return receipt requested, a copy of a notice, approved or prescribed by the Commission, which explains the employee's rights and responsibilities concerning change of physician. If after notice of injury the employee is not furnished a copy of the aforesaid notice, the change of physician rules do not apply.

The record contains a copy of the A-29 form furnished the appellee and the motion to submit additional evidence accompanying the form states, "A copy of Commission Form A-29 and Section 11 were provided to the claimant by correspondence *addressed to the claimant's attorney, Ken Reeves,* dated January 21, 1982." Furthermore, on the line on the form itself which discloses the method of delivery to the claimant, whether personally delivered or sent by registered or certified mail return receipt requested, the words "registered or certified" and "return receipt requested" have been struck through leaving the information that "A copy of this notice has been sent by mail, to Mr. Ken Reeves, 502 N. Walnut, Harrison, AR 72601 for Mrs. Betty Villines, Compton, Arkansas 72625." It is therefore clear that the statutory requirements were not met and that the change of physician rules did not apply.

In addition, we believe the commission erred in characterizing the treatment by Dr. Butts as a change of physicians rather than a referral. In its opinion the commission stated:

There is some indication that Dr. Ledbetter, who was treating claimant, wished to have claimant examined by Dr. Butts. However, the record also indicates that claimant was initially referred to Dr. Butts by her attorney. Therefore, we believe claimant's treatment by Dr. Butts should be characterized as a change of physicians rather than as a referral.

Dr. Ledbetter stated in his deposition that he had referred the appellee to Dr. Butts who provided her with psychological treatment and profiling as well. We think it immaterial that appellee's attorney also recommended Dr. Butts. We believe the record is clear that this was a referral and that the commission, although it improperly labeled it as a change of physicians, correctly approved the referral.

■ Next, appellant argues that the appellee was not entitled to a change of physician to Dr. Butts because he lacked the expertise and experience to treat the appellee's condition and that such treatment is not reasonable and necessary. We do not agree. The record shows that Dr. Ledbetter and Dr. Boop both testified that by July 2,1982, the appellee had improved physically as much as she ever would and that her psychological reaction to the ominous prognosis for her physical condition was now her primary problem. We think the commission could find that as a psychiatrist, Dr. Butts is competent to treat the mental and emotional side effects of appellee's condition, and as a medical doctor he is competent to recognize any deterioration in her physical condition which would necessitate treatment by a medical doctor.

■ Next, appellant argues that the commission erred by giving weight to, and considering, the findings of the administrative law judge concerning the credibility of Dr. Butts and the appellee. Appellant argues that it is impermissible for the commission to *rely* on the law judge's findings in this regard rather than make its own independent findings. The opinion of the commission states that it reviewed the record de novo and that it *agrees* with the opinion of the law judge—not that it *relies* on it. In view of the decisions set out in the concurring opinion in *City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984), it is difficult to understand why the commission does not simply state that it "finds from a preponderance of the evidence that the findings of fact made by the law judge are correct and they are, therefore, adopted by the commission." Regardless, the commission had this case under consideration a substantial period of time and we find nothing to support a finding that it did not thoroughly review the record and arrive at its own determination of the facts.

■■ Appellant's next argument is that the commission erred in finding the appellee to be currently totally disabled after finding her healing period had ended and that she had sustained 20% permanent disability to the right foot. Appellant submits that this holding goes far beyond the limits of the concept of current total disability as set out in *Mad Butcher, Inc.* v. *Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982), and *Sunbeam Corp.* v. *Bates*, 271 Ark. 385, 609 S.W.2d 102 (1980), and that it effectively overrules *Anchor Construction Co.* v. *Rice*, 252 Ark.

460, 479 S.W.2d 573 (1972), and repeals Ark. Stat. Ann. § 81-1313. We discussed the concept of current total disability in *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984), where we said that a claimant's benefits for a scheduled injury were not limited to the benefits provided by Ark. Stat. Ann. § 81-1313(c) (Repl. 1976) when the scheduled injury renders the claimant totally disabled. We also stated that the fact that the total disability may not last forever is not harmful to the employer or the insurance carrier. The cases in which current total disability is awarded are those in which the commission is not quite ready to admit that a claimant will never be able to return to work. In the present case, the commission must think there is a possibility that the appellee may learn to manage her persistent pain and once again return to the job market as a productive worker. Furthermore, when viewed in the light most favorable to the findings of the commission as we are required to do, *Jones* v. *Scheduled Skyways, Inc.*, 1 Ark. App. 44, 612 S.W.2d 333 (1981), we think the evidence is clearly sufficient to support a finding that appellee is currently totally disabled.

■ Finally, appellant argues that the commission erred when it found the appellant had controverted all weekly benefits beyond 20% to the foot. Appellant insists that it has paid over $16,000.00 for medical bills and benefits voluntarily and that the commission's holding that it had controverted the right of the appellee to receive all permanent benefits in excess of the 20% was error. But the record discloses that appellant contested this award from the beginning, and has consistently maintained that appellee's healing period has ended and that her award should be based on the scheduled injury to the foot and nothing more. An award of attorney's fees based on controversion is a fact decision which we do not reverse unless it is not supported by substantial evidence or there has been a gross abuse of discretion. *See New Hampshire Ins. Co.* v. *Logan*, 13 Ark. App. 116, 680 S.W.2d 720 (1984). We think the record supports the commission's decision on this point.

Affirmed.

CRACRAFT, C.J. and CLONINGER, J., agree.

Supplemental Opinion on Rehearing
En Banc
December 11, 1985

MELVIN MAYFIELD, Judge. The appellant has filed a petition for rehearing pointing out that the record shows that at the hearing before the administrative law judge it was stipulated that appellant had paid weekly benefits for a period of 92 3/7 weeks. Using that stipulation, the appellant argued in its brief that at the time of the hearing before the law judge it had paid weekly benefits from date of injury, apparently without missing a week, and as a result of those voluntary payments it had paid 17 1/7 weeks more than was required for the healing period and a 20% permanent partial disability to appellee's right foot. Thus, the appellant contended in its brief that the law judge and the commission had erred in finding it had controverted payment for those 17 1/7 weeks.

Our original opinion correctly stated that the record disclosed that appellant had consistently maintained that appellee's award for disability should be based on the scheduled injury to her foot and nothing more. However, it may be that we erred in affirming the commission's finding that compensation for these 17 1/7 weeks was controverted.

Therefore, we remand for that single issue to be resolved. The commission should determine if compensation for any or all of this period of 17 1/7 weeks was voluntarily paid. In determining that fact, the commission should keep in mind the rule that issues cannot be raised for the first time on appeal to this court. *Ashcraft* v. *Quimby*, 2 Ark. App. 332, 621 S.W.2d 230 (1981). So, unless relief from the effect of controversion for these 17 1/7 weeks was raised before the commission, no relief in that

regard should be granted even if the payments were voluntarily made.

The petition for rehearing is granted and this matter is remanded for the limited purpose stated.