Michael PENNINGTON
*v.* GENE COSBY FLOOR & CARPET

CA 94-812                                           911 S.W.2d 600

Court of Appeals of Arkansas
En Banc
Opinion delivered December 13, 1995
[Petition for rehearing denied January 17, 1996.]

*Robert B. Buckalew*, for appellant.

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.* and *John C. Fendley, Jr.* for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's order affirming and adopting the administrative law judge's decision. The ALJ found that appellant's claim for additional benefits was barred by the statute of limitations. On appeal, appellant argues that there is no substantial evidence to support the Commission's decision. We disagree and affirm.

The record reveals that appellant suffered a compensable injury on September 18, 1990. Temporary total disability benefits were paid until December 6, 1991. Appellant had been assessed a five percent permanent partial impairment rating that was paid in full on January 28, 1992. On June 23, 1992, appellant visited Dr. Jay Lipke, who was not his treating physician. Appellee's carrier, Cigna Insurance, refused to pay for this treatment and was never billed for Dr. Lipke's treatment. On April 6, 1993, appellant filed a claim for additional benefits. Appellee contested the claim on the basis that the statute of limitations barred appellant's claim.

Arkansas Code Annotated § 11-9-702(b) (Repl. 1993) provides:

> (b) Time for Filing for Additional Compensation. In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the commission within one (1)

year from the date of the last payment of compensation, or two (2) years from the date of the injury, whichever is greater.

Appellant argues on appeal that Dr. Jay Lipke's treatment on June 23, 1992, tolled the statute of limitations, and that consequently, his request for additional benefits on April 6, 1993, was within the one year statutory period. In support of his position, appellant specifically contends that a nurse who worked for his treating physician referred him to Dr. Lipke, constituting a valid referral. We disagree.

Arkansas Code Annotated § 11-9-514(a)(1) (Repl. 1993) provides:

> If the employee selects a physician, the commission shall not authorize a change of physician unless the employee first establishes to the satisfaction of the commission that there is a compelling reason or circumstance justifying a change.

The Commission's authority to characterize a change of physician as a referral has its origin in the Commission's own Rule 23, which authorizes the Commission to permit deviation from the Commission's rule when compliance is impossible or impractical. *Patrick* v. *Arkansas Oak Flooring Co.*, 39 Ark. App. 34, 833 S.W.2d 740 (1992). We held in *Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985), that a referral had occurred where the evidence showed that the claimant's treating physician had referred her to a psychiatrist for specialized treatment. In *White* v. *Lair Oil Co.*, 20 Ark. App. 136, 725 S.W.2d 10 (1987), we held that a change of physician had occurred when the claimant's treating physician refused to see him when emergency services were required. We concluded that this refusal effectively released the claimant from his care and that the claimant's family physician became claimant's treating physician. Also, in the case of *TEC* v. *Underwood*, 33 Ark. App. 116, 802 S.W.2d 481 (1991), we found that a referral occurred when the claimant had moved to Oklahoma, and her treating physician referred her to a physician in Oklahoma. In the above cases, the claimants were referred by their treating physicians or emergency circumstances required a referral for treatment. None of those situations exist in this case.

Here, the record reveals that on May 26, 1992, Janna Craig from Cigna Insurance wrote to appellant regarding his claim. She stated:

> I am writing you with regard to your workers' compensation claim. You need to return to the doctor for final medical evaluation, so that we will know if you have received all the benefits you are entitled.

> At one time Attorney Steve Laney informed me you wanted a change of physician. To date I have not received any written confirmation of that request or any written confirmation that Mr. Laney represents you in this matter. Please advise me if you desire a change of physician. If not, please return to your previous doctor.

Appellant testified that he attempted to see Dr. Amal O'Laimey, his authorized treating physician, on June 20, 1992. Appellant said that Dr. O'Laimey was not available so the nurse referred him to Dr. Lipke. Appellant admitted that he did not try to reschedule a time to see Dr. O'Laimey. Interestingly, the record also indicates that appellant was the only one to testify that the nurse at Dr. O'Laimey's office referred him to Dr. Lipke. Appellant concluded that he saw Dr. Lipke on June 23, 1992, which was three days after he sought treatment by Dr. O'Laimey.

The record indicates that Dr. Lipke's office contacted Ms. Craig concerning the bill. Ms. Craig testified, however, that she refused to authorize payment for Dr. Lipke's treatment. She said that she sent the Commission's Form A-11 to appellant's attorney on October 12, 1992, and received no response. Ms. Craig testified further that she never received a bill from appellant or from Dr. Lipke's office. She also stated that she never received a referral slip showing that Dr. O'Laimey's office had referred appellant to Dr. Lipke. The record contains one letter from Dr. Lipke's office which does not mention that appellant was referred from Dr. O'Laimey's office.

Whether treatment is a result of a "referral" rather than a "change of physician" is a factual determination to be made by the Commission. *Patrick* v. *Arkansas Oak Flooring Co., supra.* When the Commission's findings of fact are challenged on appeal, we affirm if they are supported by substantial evi-

dence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We do not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Id.*

■ The Commission found that appellant received unauthorized treatment from Dr. Lipke. After reviewing the record, we cannot say that there is no substantial evidence to support the Commission's findings that appellant's treatment by Dr. Lipke was not based on a valid referral and that appellant's claim was barred by the statute of limitations.

Affirmed.

MAYFIELD, J. and BULLION, S.J., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree that the statute of limitations has barred the appellant's claim for additional worker's compensation benefits in this case.

Arkansas Code Annotated § 11-9-702(b) (1987) provides that where compensation has been paid, a claim for additional compensation must be made within one (1) year from the date of the last payment, or within two (2) years from the date of injury.

In this case, the date of injury was more than two (2) years before the additional claim was made on April 6, 1993. However, the appellant testified that he saw a doctor on June 23, 1992. Therefore, unless this visit to the doctor was unauthorized by the appellant's employer and its insurance carrier, Cigna Insurance Company, the appellant's claim for additional compensation was not barred by limitations. This is true because, for statute of limitations purposes, the date that medical benefits are furnished is deemed to be payment of compensation — not the date that payment for the medical services is actually made. *See Heflin* v. *Pepsi Cola Bottling Co.*, 244 Ark. 195, 424 S.W.2d 365 (1968); *Cheshire* v. *Foam Molding Co.*, 37 Ark. App. 78, 822 S.W.2d 412 (1992).

At the hearing before the administrative law judge it was stipulated that the treatment rendered to appellant for his on-the-

job injury by Doctors Olaimey, Williams, Arnold, and Doyle was authorized and that Janna Craig, an adjuster for Cigna Insurance Company, received notice on June 25, 1992, of Dr. Lipke's medical treatment of the appellant on June 23, 1992. The appellant testified that he attempted to see his treating physician, Dr. Olaimey, in June of 1992, but he was unavailable and Dr. Olaimey's nurse told appellant to see Dr. Lipke, who in turn referred him to Dr. William Saer. The Commission found, and the majority opinion agrees, that this referral from Dr. Olaimey's staff was not a valid referral. I do not think the evidence and the law will support that finding.

Janna Craig testified that in March 1992, she received a call from Steve Laney, a Camden attorney, stating he represented the appellant and was seeking a change of physicians for appellant to Dr. John Wilson. She said she told him that was improper procedure and instructed him that he would need to apply to the Workers' Compensation Commission for a change of physicians. Ms. Craig said the next she heard about appellant's claim was when she received a telephone call from Dr. Lipke's office on June 25, 1992, asking that she authorize payment for charges created when appellant was examined by Dr. Lipke, and she refused the charges. She then sent Attorney Laney an A-11 form setting forth the statute of limitations and, after getting no response, closed the file on November 16, 1992.

The appellant testified that Mr. Laney first represented him, but he later retained Robert B. Buckalew of Little Rock, and there is a letter in the record dated July 15, 1993, from Dr. Olaimey to appellant's attorney, Mr. Buckalew, which states:

> Following our conversation per telephone, it was nice talking to you about Mr. Michael Pennington. It is out [sic] policy when I'm not available to refer our patient's [sic] to Dr. Jay Lipkie [sic] for evaluation and reatment [sic] for their orthropedic [sic] care.

There is also a form entitled "Patient Information" in the record. This form is signed "Michael Pennington" and contains handwritten information about the appellant. It states, in part, that he had a "herniated disk" and that it happened on the job. It states that the visit was "related to a workers' compensation injury," that the employer was "Gene Cosby," and that the bill

would be paid by "Cigna Ins. Co." The form also states that the patient was referred by Doctor Olaimey. And there is a handwritten note, across the blanks for information about the insurance company, which states that "Cigna would not authorize."

Also in the record is a letter from Dr. Lipke to Dr. Olaimey, dated June 23, 1992, stating that Michael Pennington has "been seen by Dr. Ronald Williams and Dave Arnold and apparently had a personality conflict with Dr. Arnold." The letter also states that Mr. Pennington relates that he "wants to have his back fixed via surgery" and "I've suggested he see Dr. Ted Saer, Dr, Arnold's former associate, for further evaluation."

And the record contains a letter from Janna Craig to the appellant, dated May 5, 1992, in which she states:

> I am writing you in regard to your workers' compensation claim. You need to return to the doctor for a final medical evaluation, so that we will know if you have received all benefits to which you are entitled.
>
> At one time Attorney Steve Laney informed me you wanted a change of physician. To date I have not received any written confirmation of that request or any written confirmation stating that Mr. Laney represents you in this matter. Please advise me if you desire a change of physician. If not, please return to your previous doctor.

Now it is perfectly clear from the record that after the appellant had sustained a work-related injury, had been treated by doctors authorized by Cigna Insurance Company, and had been paid some temporary and some permanent disability benefits, he then received a letter from Janna Craig, an adjuster for the insurance company, telling him to return to his doctor for a final medical evaluation "so that we will know if you have received all the benefits to which you are entitled." This letter was written on May 5, 1992, and on June 23, 1992, the appellee — in keeping with the suggestion of Cigna's adjuster — went to see an authorized doctor, Dr. Olaimey. The doctor was not available and his nurse — in keeping with the doctor's policy — referred the appellant to Dr. Lipke. That doctor's office personnel had the appellant fill out a form, and Dr. Lipke saw the appellant on June 23, 1992. Dr. Lipke also wrote Dr. Olaimey that same day reporting

what he had told the patient. And Ms. Craig testified that on June 25, 1992, Dr. Lipke's office called her asking that she authorize payment for the appellant's visit to Dr. Lipke and that she refused to do so.

There is no dispute about the above events. The law judge's opinion was adopted by the full Commission "including all findings and conclusions therein," and the law judge's opinion does not indicate that any of these events were in doubt factually. His discussion assumes that these events occurred and is based on two conclusions of law. First, the opinion states:

> For statute of limitations purposes, compensation for medical benefits is deemed to be the date on which treatment is furnished, not the date on which the medical bill is paid. *Heflin* v. *Pepsi Cola Bottling Co.*, 244 Ark. 195, 198, 424 S.W.2d 365 (1968). Implicit in this rule is that conclusion that the furnished treatment cannot be considered compensation unless it has been paid.

And the second conclusion of law given by the law judge to support his decision is stated as follows:

> Here, the claimant's claim for additional benefits came too late, falling outside the statute of limitations since he obtained treatment without approval (within the limitation period) and this was not accepted or paid by the carrier.

The problem is that both conclusions contain errors of law; however, there is no problem about the occurrence of the events involved. Thus, I do not agree with the majority opinion's conclusion that the law judge's conclusion (adopted by the Commission) is supported by substantial evidence. The problem is really not the evidence. It is the law that is applied to the evidence.

The appellant contends that because a nurse in Dr. Olaimey's office told him to go see Dr. Lipke, this was a valid referral. In support of this argument he cites *White* v. *Lair Oil Co.*, 20 Ark. App. 136, 725 S.W.2d 10 (1987), and *TEC* v. *Underwood*, 33 Ark. App. 116, 802 S.W.2d 481 (1991).

In a case cited by both of the above cases, *Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985), this court

held that a referral had indeed occurred where the evidence showed that a claimant's treating physician had referred her to a psychiatrist. We observed:

> [W]e believe the commission erred in characterizing the treatment by Dr. Butts as a change of physicians rather than a referral. In its opinion the commission stated:
>
>> There is some indication that Dr. Ledbetter, who was treating claimant, wished to have claimant examined by Dr. Butts. However, the record also indicates that claimant was initially referred to Dr. Butts by her attorney. Therefore, we believe claimant's treatment by Dr. Butts should be characterized as a change of physicians rather than as a referral.
>
> Dr. Ledbetter stated in his deposition that he had referred the appellee to Dr. Butts who provided her with psychological treatment and profiling as well. We think it immaterial that appellee's attorney also recommended Dr. Butts. We believe the record is clear that this was a referral and that the commission, although it improperly labeled it as a change of physicians, correctly approved the referral.

16 Ark. App. at 105, 697 S.W.2d at 934.

In *White, supra,* we required the employer to cover the appellant's medical expenses after his treating physician refused to see him. We stated:

> When Dr. Tsang refused to assist appellant when emergency services were required, he effectively released his patient from his care. At that point, Dr. Dunaway [appellant's family physician] stepped into Dr. Tsang's shoes and became appellant's treating physician. Because the change was not of appellant's seeking but was instead prompted by exigent circumstances, we cannot conceive that a reasonable mind could reach the conclusion that a change of physician had occurred.

20 Ark. App. at 138, 725 S.W.2d at 12.

In *TEC, supra,* the claimant had moved to Oklahoma and had been seeing a doctor there. The appellant argued that this con-

stituted an unauthorized change of physician and cited cases to support its position. We said:

> However, these cases have no application here because Dr. Mertz's treatment was a "referral" rather than a "change of physician." Appellee testified that she had telephoned the office of Dr. Wolfe and asked for a referral "over there," that she was told "they" would talk to Dr. Wolfe and he would refer her to someone; that she was given the name of Dr. Mertz; that Dr. Wolfe sent her "records and everything to Dr. Mertz and let him know that I was going to be seeing him." The record also contains a letter from Dr. Mertz to Dr. Wolfe thanking him for referring appellee. The law judge held that appellee's request for a referral was not "doctor shopping under the circumstances." The full Commission made the same factual determination and adopted the law judge's finding. We think the Commission's decision is supported by substantial evidence and the law. *See Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985).

33 Ark. App. at 120, 802 S.W.2d at 484.

I agree with the appellant's contention that when the nurse in Dr. Olaimey's office referred him to Dr. Lipke because Dr. Olaimey was unavailable, this was a valid referral, not a change of physicians; therefore, the furnishing of medical services by Dr. Lipke tolled the statute of limitation. Although I view this as an issue of law because the facts involved are really not in dispute, even if the issue is one of substantial evidence I think this court must still hold that the appellant's visit to Dr. Lipke was a referral rather than a change of physicians. Our rule is clear. We view the evidence in the light most favorable to the Commission's decision and affirm that decision if it is supported by substantial evidence; but substantial evidence exists only if reasonable minds could have reached the conclusion reached by the Commission, and we will reverse the Commission if we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion reached by the Commission. *Deffenbaugh Industries* v. *Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993); *Price* v. *Little Rock Packaging Co.*, 42 Ark. App. 238, 856 S.W.2d 317 (1993). Here, I do not think the law judge's

finding (adopted by the Commission) that appellant's visit to Dr. Lipke was obtained without approval is supported by substantial evidence. Under the law and the evidence fair-minded men would conclude that the visit to Dr. Lipke was a referral by a doctor who was authorized to treat the appellant.

The other error made by the law judge (and adopted by the Commission) is the statement that implicit in the *Heflin* v. *Pepsi Cola* case, *supra*, is, "The conclusion that the furnished treatment cannot be considered compensation until it has been paid." That case clearly holds that with regard to the limitations period it is the *furnishing* of medical services that constitutes payment of compensation within the meaning of the workers' compensation act and not the *payment* of the charges therefor. It is true that the employer or its insurance carrier must have reason to know that the medical services are being furnished the injured worker. *Superior Federal Savings & Loan Ass'n* v. *Shelby*, 265 Ark. 599, 580 S.W.2d 201 (1979); *McFall* v. *United States Tobacco Co.*, 246 Ark. 43, 436 S.W.2d 838 (1969). But those cases do not hold that furnished treatment cannot be considered compensation until it has been paid for as the law judge in the case at bar stated in his decision.

In our case of *Cheshire* v. *Foam Molding Co.*, 37 Ark. App. 78, 822 S.W.2d 412 (1992), we referred to the *Heflin* case and said, "In that case, the court held that the furnishing of medical services constitutes payment of compensation within the meaning of Ark. Code Ann. § 11-9-702(4)(b) (1987) [formerly Ark. Stat. Ann. § 81-1318(b) (Repl. 1960)], based upon reasoning that the claimant is 'compensated' by the furnishing of medical services and not by the payment of the charges therefore." And in *Plante* v. *Tyson Foods, Inc.*, 319 Ark. 126, 131, 890 S.W.2d 253, 255 (1994), the court cited *Heflin* as authority for the statement that "it is the furnishing of the services that tolls the statute, not the payment therefor." The court also stated that "regardless of whether the respondent had actual knowledge of the 1989 and 1990 visits, the respondent should have known they would occur, . . . ."

In the present case, Cigna Insurance Company certainly knew or should have known of appellant's visit to Dr. Lipke. His office called and asked if Cigna's adjuster, Ms. Craig, would

authorize the payment. While Ms. Craig said she would not authorize payment for the visit, she had written the appellant and suggested that he "needed to return to the doctor for a final medical evaluation." That is exactly what he did. And in keeping with the policy of the doctor that the insurance company had authorized to treat the appellant, the appellant was referred to Dr. Lipke. On April 6, 1993, within one year after the appellant's visit to Dr. Lipke on June 23, 1992, the appellant filed a claim for additional compensation. Under this evidence and the law, the appellant's claim is not barred by limitations because the appellant was referred to Dr. Lipke by the doctor that Cigna Insurance had authorized to treat appellant, the visit to Dr. Lipke was made within the time limitations of the statutes, and Ms. Craig knew or should have known of the visit.

I am authorized to state that Special Judge Bruce Bullion joins in this dissent.