668 So.2d 1232 (1996)
Alfred D. PIERCE
v.
LOUISIANA MAINTENANCE SERVICE, INC.
No. 95-CA-747.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 1996.
Writ Denied April 19, 1996.
*1233 Anne Marie Parker and L. O'Neal Williams, Jr. Williams, Williams & Montgomery, Poplarville, MS, for plaintiff/appellant, No. 1, Alfred D. Pierce.
Joseph A. Reilly, Jr., Henderson, Hanemann & Morris, Houma, for defendant/appellee, the Gray Insurance Company and Louisiana Maintenance Services, Inc.
Christopher M. Landry, Metairie, for defendant/appellant, the Travelers Insurance Company.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
BOWES, Judge.
Alfred Pierce appeals a judgment of the office of Worker's Compensation which found that he was entitled to disability and medical benefits until April 19, 1993, when he reached maximum medical improvement. We affirm.

FACTS
Alfred Pierce ("Pierce") was a resident of Mississippi who applied in Louisiana for a job with Louisiana Maintenance Service Inc. ("Louisiana Maintenance"). Louisiana Maintenance is a Louisiana corporation domiciled in Hahnville engaged in the business of supplying personnel to companies in need of skilled and unskilled workers. In 1989, Louisiana Maintenance entered into a contract to supply personnel to a job site in Bayonne, New Jersey. Notified by its regular worker's compensation insurer, the Gray Company, that it did not write insurance in *1234 New Jersey, the company obtained a policy for New Jersey worker's compensation insurance with The Travelers Insurance Company.
Appellant began work in New Jersey in November of 1991. On February 23, 1992, he was injured by a fall on the job site. After being seen in the emergency room, Mr. Pierce returned home to Mississippi. Worker's compensation benefits were paid by Travelers until April 19, 1993, at which time claimant's treating physician found he reached maximum medical improvement.
Appellant filed the present compensation action in Louisiana against both Travelers and Gray. Travelers issued an additional lump sum payment in the amount of $4,633.04 for the period of April, 1993, through November, 1993. Gray answered and denied that any benefits were due; in the alternative, it argued that if any benefits were due, they were due from Travelers. Travelers also denied that any benefits were due, and further made a claim for reimbursement from Gray for half the payments it had already made, plus reimbursement for the lump sum "overpayment."
Following a hearing, the hearing officer determined that Travelers, not Gray, should bear the loss herein; that is, that the Traveler's policy provided for the appropriate compensation benefits. Further, it determined that Pierce was injured in the course and scope of his employment and that claimant was not entitled to any benefits beyond April 19, 1993, when he reached maximum medical improvement.
Pierce and Travelers each appeal, each arguing the trial court erred in finding that Travelers should bear the loss; Pierce further appeals the finding that he was not entitled to further compensation benefits, medical benefits, supplemental earnings (SEB) benefits, or penalties and attorneys fees.

EVIDENCE OF DISABILITY
Pierce testified that he was thirty-four years old and had a ninth grade education (although he does have a GED equivalency diploma). He began employment with Louisiana Maintenance Service on November 15, 1991, and was assigned to work in Bayonne, New Jersey. He was a welder's helper who was required to move equipment weighing between fifty and one hundred fifty pounds. On February 23, 1992, he was picking up tools and timbers used at the welding site; while carrying a timber weighing about one hundred pounds, he felt a pain in his back and fell.
He was taken to the emergency room, where he was told that he had a broken trochanter (a bone in the upper thigh), and that he may have a herniated disc in his back. He was given crutches and a prescription for pain, and told to consult an orthopedic surgeon. He did not return to work for Louisiana Maintenance, but went home to Mississippi. Then he consulted Dr. Mark Hontas, an orthopedist practicing at the Tulane Medical Center in Slidell, Louisiana. Following x-rays, Dr. Hontas found the trochanter was not broken, but instead that there was a calcium deposit in the area; an MRI was requested for which Traveler's refused to pay.
Instead, the employer instructed him to go to the Ochsner Clinic at which time he came under the care of Dr. Peter Casten, an orthopedic surgeon. Dr. Casten performed the MRI, prescribed a muscle relaxant and told him to continue on crutches. On the next visit, physical therapy was prescribed, which plaintiff initiated at Crosby Memorial Hospital in Picayune, Mississippi, although he testified that some mornings it hurt too bad to go to the therapy sessions.
After he completed his sessions at Crosby, Dr. Casten sent him to the Institute for Wellness in Hattiesburg for a "muscle strengthening" program. Although he had pain, he continued the program. When that program was completed, he was sent for a functional capacity evaluation.
Then, Louisiana Maintenance arranged for him to be seen by another physician, Dr. Robert Steiner, who opined that Pierce should remain in sedentary type work activity. He was not released to return to work until April of 1993, at which time Dr. Casten told him he could perform light-duty work: he was told to refrain from repetitive stooping *1235 and bending, to alternate between standing and sitting, and do no heavy lifting. He was supposed to remain in therapy after April, but Travelers refused to pay for it.
Next, claimant consulted Dr. Joe Jackson, who also told him that he should not return to his former employment, but could only do light work. He called the offices at Louisiana Maintenance, but was told that they had no light duty work for him and he was then laid off. Vocational rehabilitation had not been offered.
Several months later he got a job with a pest control company, employment which was within his work restrictions. Claimant filed for worker's compensation benefits in June of 1994; in November he received a check from Travelers for $4,633.04.
Because Mr. Pierce continued to have pain, he consulted another doctor, Dr. David Bomboy, in Hattiesburg, Mississippi. Dr. Bomboy confirmed the fact that claimant had a herniated disc in his back.
Conservco, the company which managed the compensation claims for Louisiana Maintenance, sent him a list of available jobs, none of which fit into his work restrictions. In January of 1994, another list was made, but claimant did not receive it until December of that year.
In March of 1994, claimant purchased a route with another pest control company, and this employment he maintained at the date of the trial. He saw Dr. Casten for the last time in August 1994 and was limited to sedentary work and light lifting; Dr. Casten gave him the "McKenzie Back Book" and a prescription for a mild muscle relaxant.
In March, 1995, claimant went to Crosby Hospital Emergency Room. He had bent over and suffered sudden severe pain; he was given a prescription for pain medication and a muscle relaxant. and told to see an orthopedist. However, he was later informed that neither Gray Insurance nor Travelers would pay for such a visit.
He continues to have on-going pain in his back into his leg and heel. His wife does most of the driving, since he often has to change positions. Standing on a hard floor for more than five minutes is very painful, and he often has to lie down after a job. In his job, he mixes a half gallon of pest spray rather than filling the entire one gallon container. He still takes Ibuprofen and a mild muscle relaxant, and has difficulty sleeping because of pain and can do very little around the house. A functional capacity test made two weeks prior to trial revealed the same restrictions made by the other doctors as mentioned above.
Claimant's mother, Barbara Benedict, and his wife, Tina Pierce, testified, and both corroborated his testimony.
The deposition and medical reports of Dr. Peter Casten were admitted into evidence in lieu of his testimony. In its reasons for judgment, the trial court thoroughly reviewed the evidence and carefully summarized the medical testimony. We adopt the facts contained therein as follows:
Mr. Pierce's main treating physicians were at Ochsner Clinic. Therefore, this Court gives great weight to those physicians and health care providers for its primary determination of the type of injury and its residual effect.
Mr. Pierce's initial treating physician at Ochsner was Dr. Casten, a specialist in occupational medicine. Dr. Casten ordered x-rays, EMG/NCS (nerve conduction) studies and an MRI of the lumbar spine. The x-rays showed slightly narrowed lumbosacral discs at L5-S1, and the MRI showed mild degenerative changes at the L5-S1 pre-existed the accident that occurred one month before the initial examination. His working diagnosis was low back pain with decreased sensation in the left leg and lumbosacral radiculopathy that had to be ruled out. He referred the Patient to Orthopedic Surgeon (Lynn) Hamilton and Neurosurgeon (Edward) Connelly for further examination and opinion.
Both Drs. Connelly and Hamilton suggested conservative treatment and found in their examination (sic) that he had only mild degenerative changes at L5-S1 otherwise unremarkable examinations.

*1236 Dr. Casten recorded positive Waddells[1] on his examinations of April 30, 1992; June 8, 1992; July 7, 1992; August 24, 1992; September 21, 1992; November 13, 1992; February 5, 1993. This caused Dr. Casten to conclude:
I would say that he displayed multiple positive Waddell signs, and my conclusion from that is that the subjective complaints could not be supported by objective findings.
Significantly, Mr. Pierce had no objective physical findings beyond the first or second visit when he came to the clinic.
Eventually, Dr. Casten became so concerned about the unsupported physical complaints that he referred Mr. Pierce to an independent medical examiner, Orthopedic Surgeon Steiner.
Dr. Casten had the opportunity of not only reviewing the report of Dr. Steiner but (sic) his deposition, which has been admitted into evidence by this Court. Dr. Casten felt that Dr. Steiner's opinion was quite in agreement with his own in that it also registered positive Waddells and minimal findings on MRI.

A work capacity evaluation was ordered by Dr. Casten to define the work load level that he might be capable of comfortable performing. Susan Fortier, an occupational therapist at Ochsner, conducted the evaluation. Dr. Casten pointed out that the input of the patient is extremely important and that the test can only be valid if he puts forth his maximum effort, as tolerated by any pain that might be present. The evaluation has built in validity criteria to make certain that the patient is putting forth maximum effort. Unfortunately, Mr. Pierce registered so many inconsistencies in the validity criteria that it rendered it an invalid evaluation. According to Dr. Casten, Ms. Fortier felt that the test was invalid, and so did Dr. Casten.
Dr. Casten was extremely thorough and apparently left no stone unturned. To give the patient the benefit of the doubt, he not only reviewed the MRI, a myelogram and a postmyelogram CT scan in detail himself, but he reviewed it with a neuroradiologist, Dr. Kenneth Miller. Dr. Miller reached the same conclusion as did Dr. Casten:
Dr. Miller described mild degenerative changes at the L5-S1 disc space and disc, and also a mild bulge, which in his opinion was not very impressive, and he could not find any evidence of nerve root impingement.
The type of minimal degenerative change found at L5-S1 on all of the diagnostic studies was similar to that which has been discussed at some length in several recent studies which have been published. These studies disclose that as much as 30% of the population is without symptoms (pain). In other words, 30% of the population or greater is walking around the face of the earth pain free and asymptomatic but having similar degenerative changes to that of Mr. Pierce.

Finally, in the last analysis, when it came time to assign restrictions, vel non, Dr. Casten opined that if the pain complaint component was removed, then he *1237 would place no restrictions on his work activities.
Dr. Steiner's deposition was admitted into evidence in lieu of his live testimony. A reading of his deposition is a microcosm (sic) of that of Dr. Casten. He found multiple Waddells indicating psychological overlay and symptom magnification.
He summarized the work capacity evaluation. He could place no reliance upon the WCE (work capacity evaluation) as an orthopedic surgeon and summarized his findings as follows:
Basically, the physical therapist said that true capacities were not able to be determined due to inconsistencies in patient performance during testing, and that goes along with the way the patient responded during my examination.
Dr. Steiner also noted the study recently published in the New England Journal of Medicine showing a large percentage of the population having abnormal MRI findings in the low back, yet these individuals were asymptomatic.
[Emphasis (in quoted reasons) added].
The testimony of the occupational therapist, Susan Fortier, was introduced into evidence along with her written report. The testimony and report indicated that appellant had a number of inconsistencies in the testing, leading Ms. Fortier to conclude that:
... more than likely, the effort he was putting forth wasn't quite his full capability.
The test concluded that based on the responses, claimant was limited to light work lifting ten pounds, or less frequently, twenty pounds, but "it is difficult to determine Mr. Pierce's true capabilities secondary to the inconsistencies."
Mr. Pierce was seen by Mississippi physicians, Drs. David Bomboy and Joe A. Jackson, both of whom testified via their depositions. Dr. Jackson, a neurologist who examined plaintiff only once in June of 1993, opined that claimant suffered from a significant muscle ligamentous injury to the spine, with or without some bulging disc disease. He felt that Mr. Pierce had already reached his maximum medical improvement and would be fit for light sedentary work. Dr. Jackson felt that his findings formed a sufficient basis for claimant's complaints of pain.
Dr. Bomboy, an orthopedic surgeon, examined claimant in November of 1993 and once again in November of 1994. He had a copy of the MRI and myelogram, but had not reviewed the records from Ochsner. He concluded that Mr. Pierce had suffered a ruptured disc as a result of the accident in question, although it was possible the rupture had occurred prior to the accident.
Dr. Bomboy felt that plaintiff could not return to his former employment, but should remain in sedentary work; he also felt that there was a sufficient basis for the pain complaints. Dr. Bomboy had no reason to doubt the validity of the history given him by claimant.
Maribeth Ramberg, who was claimant's physical therapist for a time in Mississippi, also conducted a work capacity evaluation on behalf of the plaintiff. She noted no inconsistencies or symptom magnification, but did not apply any objective test criteria to determine such magnification. After the evaluation, she opined that claimant could do sedentary work carrying 10 pounds frequently, 20 pounds infrequently. Mr. Pierce came in for only 19 of the scheduled 30 therapy treatments.
After thoroughly reviewing all of the evidence, the trial court concluded as follows:
In summary, considering the inconsistencies in the disability and medical findings as to the injury suffered by Mr. Pierce, the evidence suggests that there is no residual impairment which would justify compensation beyond April 19, 1993.

ANALYSIS
In a worker's compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733. Therefore, a factual finding cannot be set aside unless the appellate court finds that it is *1238 manifestly erroneous or clearly wrong. Smith, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). This is so even where the evidence consists of depositions.
The manifest error-clearly wrong standard must be applied even where the evidence before the trier of fact consists solely of written reports, records and depositions.
Thomas v. Universal Match Corp., 93-767 (La.App. 5 Cir. 3/16/94), 635 So.2d 1220, citing Alexander v. Pellerin Marble & Granite, 93-C-1698, (La. 1/14/94), 630 So.2d 706, 710. The trial court's factual findings of work-related disability will not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings unless they are shown to be clearly wrong. Stewart v. Ormond Country Club, 542 So.2d 658 (La.App. 5 Cir.1989); Guerrero v. Tico, 436 So.2d 1237 (La.App. 5 Cir.1983). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Freeman, supra; Rosell, supra.
Whether a claimant experiences pain while working, and the extent thereof, are factual questions.
The trial court's factual findings as to disability is the court's function to be determined by the weight of the evidence accorded by the court. Stewart, supra; Perrilloux v. Godchaux-Henderson Sugar Co., 436 So.2d 1325 (La.App. 5th Cir.1983).
Utilizing the requisite criteria for review, we find no manifest error in the determination of the trial court that Mr. Pierce reached maximum medical improvement by April 19, 1993. The court gave the proper weight to the testimony of Mr. Pierce's treating physician, Dr. Casten. The diagnosis and opinions of treating physicians are entitled to more weight than those of doctors retained for trial purposes only. Orgeron v. Prescott, 636 So.2d 1033 (La.App. 5 Cir.1994). Dr. Casten, after numerous examinations, tests, and extensive treatment, concluded that appellant's problem was a herniated or protruded disc which pre-existed the accident in question; and that Mr. Pierce's complaints of pain were unsupported by any objective findings.
This opinion was echoed and agreed with by Dr. Steiner.
The work capacity evaluation performed by Ms. Fortier also noted inconsistencies in claimant's behavior.
We are aware that claimant was generally found to be cooperative during his treatment and testing; as we understand "symptom magnification"; however, the cause can be psychological or "hysterical" and not necessarily deliberate malingering. To the extent that the trial court questioned the credibility of the appellant, however, we find that there was a reasonable, factual basis for such questionobjective medical measurement of subjective and inconsistent responses. The court clearly concluded that the claimant, for whatever reason, magnified his complaints of pain and the extent of his physical limitations.
We cannot say that such determination relative to credibility is clearly wrong in the present case. Reviewing the record in its entirety, we find that there was sufficient evidence before the court upon which to base the finding that claimant had no accident-related residual impairment, and thus was not entitled to any benefits beyond April 19, 1993. Clearly no award for penalties and attorneys fees are due.

INSURANCE POLICY APPLICABILITY
On appeal, claimant and Travelers both urge that there was error in the finding of the trial court that the only applicable insurance policy was that issued by Travelers. For the following reasons we do not reach that issue.
Traveler's filed a cross-claim for reimbursement of half of all payments made by it as of the date of trial; additionally, Travelers has claimed reimbursement from Gray for what it contends was an erroneous lump sum payment of Louisiana compensation in *1239 the amount of $4,603.04. That latter amount was paid after compensation proceedings were filed in Louisiana.
The administrative hearing officer correctly concluded that the compensation court does not have jurisdiction to determine a claim for reimbursement between two insurers, as such claim does not fall within the parameters of the Louisiana Worker's Compensation Act and the jurisdiction of the Office of Worker's Compensation, La.R.S. 23:1291 et seq. Such claim is properly brought in the district court.
Additionally, Travelers failed to prove at the hearing that under New Jersey law, it did not owe any further weekly benefits after claimant reached maximum medical cure. The only witness to testify concerning the Travelers payments was Elaine Landauer, a Louisiana claim representative of Travelers, who could not state the basis of the (New Jersey) weekly benefits of $409.00 per week. She could not state, and did not know, whether the New Jersey law required Travelers to make further payments beyond maximum medical improvement. No evidence was presented as to how Travelers calculated the lump sum payment which it claims represented "Louisiana benefits." Travelers failed to carry its burden of proof that any reimbursement was due.
Finally, La.R.S. 23:1035.1 permits an employee to obtain compensation benefits in Louisiana if he was injured while working outside of the state provided that, at the time of such injury, he is working under a contract of hire made in this state; in such case, the total amount of all income benefits paid or awarded the employee under such other worker's compensation law shall be credited against the total amount of income benefits which would have been due the employee under this act, had the claim been made solely under this act. R.S. 23:1035.1.
From the date of the accident on February 23, 1992, through April 19, 1993 when Mr. Pierce reached maximum medical improvement, he was temporarily totally disabled. The benefits due to claimant for temporary total disability are sixty-six and two-thirds percent of his wages during the period of disability. La.R.S. 23:1221(1).
The applicable average weekly wage rate, according to the evidence at trial, was $369.38.[2] Sixty-six and two thirds of that average weekly wage equals $246.23. For the period of his temporary total disability, Travelers paid claimant $409.00 per week in worker's compensation benefits.[3] Even assuming that the Gray company would have been liable for payment of some of the benefits, by granting the statutorily mandated credit to Gray, the Gray company would not owe any past due benefits to plaintiff, who received more from Travelers during the period of his disability than he would have been entitled to under Louisiana law.
Accordingly, for all of the foregoing reasons, we do not determine which worker's compensation policy was applicable.

DECREE
For the foregoing reasons, the judgment of the hearing's officer is affirmed in all respects. Costs of this appeal are divided equally between claimant and the Travelers.
AFFIRMED.
NOTES
[1] Dr. Casten explained in his deposition, the definition of "Waddells" and "nonorganic physical signs." Dr. Waddell was a Scottish physician who conducted a study in the late 1970's that addressed the evaluation of patients' subjective complaints in relationship to objective findings. The study concluded there are five major areas that can be addressed during an office examination by a physician in order to objectively evaluate subjective symptoms that are reported by the patient. An example of a positive Waddell would be the straight leg raising test which is done in two different positions. Traditionally, the first position is with the patient laying on his back. The leg is held straight and raised upward until pain in the low back is registered. If it is a true symptom the patient is reporting pain from the stretching of the nerves running from the low back into the leg and presumably being impinged upon by something, such as a disc or other pathology. The second position is carried out later in the examination and involves the patient sitting on the examination table with his legs hanging over the side. The physician will raise the patient's foot until the leg is straight, thus duplicating the earlier test done from the lying position. If the subjective pain level reported by the patient is not duplicated at the same level, it is indicative of nonorganic pain or symptom magnification. The reasons for the Waddell signs can be varied and include psychological disturbances from hypochondriasis to hysterical reactions to malingering. (Reasons for Judgment, pp. 15-16).
[2] Plaintiff testified at trial that "they gave us $10.00 a day for expense money if we needed it." The wage record and copies of checks submitted at trial did not reflect that these amounts had ever been paid to claimant. Therefore, that amount is not properly included in the calculations.
[3] That amount appears to have been an error in calculation on the part of Travelers, which did not take into consideration that claimant's wages were calculated on a two weeks on, two weeks off basis.