Allen BLOOM, Jr., Appellant,

v.

TEKTON, INC., and State Farm Fire & Casualty Co., Appellees.

No. S–9019.

Supreme Court of Alaska.

July 7, 2000.

Michael J. Patterson, Law Office of Michael J. Patterson, Anchorage, for Appellant.

Trena L. Heikes, Law Office of Trena L. Heikes, Anchorage, for Appellees.

Before EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## *O P I N I O N*

BRYNER, Justice.

## I. *INTRODUCTION*

Allen Bloom appeals the Alaska Workers' Compensation Board's denial of his request to replace his attending physician without the consent of his employer, Tekton, Inc. Bloom maintains that the board's decision contradicts its longstanding policy of permitting injured workers to substitute new attending physicians when the worker's current physician is unable or unwilling to treat. Because the record indicates that Bloom's attending physician refused to treat Bloom, we conclude that the board erred in denying Bloom's request to substitute a new physician. Accordingly, we reverse.

## II. *FACTS AND PROCEEDINGS*

On February 14, 1994, Allen Bloom injured his back while working as a carpenter for Tekton, Inc. Bloom felt pain in his lower back and left leg, and he sought treatment from Christopher Horton, an orthopedic surgeon. Dr. Horton told Bloom that he did not "do backs," and he referred Bloom to William Reinbold. Dr. Reinbold performed an unsuccessful back surgery on Bloom in May 1994. Bloom then changed doctors, seeking treatment from Louis Kralick. Dr. Kralick performed a second surgery on Bloom in October 1995. This surgery was more successful than the first, and Bloom initially reported feeling much better.

After the second surgery, Bloom underwent several months of physical therapy. After the physical therapy, Dr. Kralick reported that he had no further treatment recommendations for Bloom, and the doctor instructed that Bloom could be evaluated for impairment. Tekton's insurance adjuster referred Bloom to Dr. Larry Levine, who requested some additional tests and eventually concluded that Bloom had a "10% whole-person impairment."

Bloom was then evaluated for job retraining, and was retrained as a truck driver. About nineteen months after his second surgery, Bloom began to feel back pain again. Bloom reported that in May 1997, "he was standing up and leaning back, and noted recurrent low-back pain. His knee collapsed, and he almost fell down." Bloom telephoned Dr. Kralick's office to schedule an appointment, but Dr. Kralick's receptionist instructed Bloom that the doctor's policy was only to see patients, even former patients, who were referred to him for surgery by another doctor. The receptionist gave Bloom the name of another doctor, Michael Gevaert, and Bloom scheduled an appointment with him.

Dr. Gevaert examined Bloom on June 5, 1997. Dr. Gevaert noted "[l]ow back pain and left sciatica, status post two back surgeries. Examination reveals decreased ankle reflex and inconsistent motor and sensory loss. There are four positive Waddell signs."[1] He recommended "a conservative approach for the radicular pain," prescribed Percocet and Cataflam, and sent Bloom to physical therapy for two weeks.

On June 23 Bloom returned for another examination. Dr. Gevaert described his impression of Bloom: "Chronic low-back pain and radicular symptoms, with five positive Waddell signs." He concluded that there were not "enough objective findings to con-

---

1. Waddell signs derive from a study done by Dr. Waddell, a Scottish physician who examined the relationship between patients' subjective complaints and objective findings. *See Pierce v. Loui-* *siana Maintenance Serv., Inc.,* 668 So.2d 1232, 1236 n. 1 (La.App.1996). The presence of positive "Waddell signs" may be "indicative of nonorganic pain or symptom magnification." *Id.*

tinue any further treatment. Clinical examination does not substantiate [Bloom's] subjective symptoms. In my opinion, he should be able to drive a truck." Dr. Gevaert released Bloom from the clinic and instructed him to finish his current physical therapy program.

Bloom returned to Dr. Gevaert on July 9, 1997, for a "followup visit" and expressed that he was "extremely dissatisfied" with the doctor's latest assessment of his condition. Bloom asked for a referral to Dr. Glenn Ferris so he could get a second opinion. Dr. Gevaert refused to give Bloom a referral, but noted in his report that Bloom would contact Tekton's insurance adjuster to obtain a second opinion.

Tekton refused Bloom's request to change his attending physician to Dr. Ferris. Bloom then sought an order from the Alaska Workers' Compensation Board for substitution or change of his attending physician without the employer's consent.

Bloom also tried to return to Dr. Gevaert for additional treatment. When Bloom contacted Dr. Gevaert's office, he was told that the doctor had left his practice in Anchorage and moved to Wasilla, where he worked three days per week for the Veterans Administration, and one day per week in private practice.

On September 2, 1997, Tekton filed a motion with the board to controvert all of Bloom's claims, because Dr. Gevaert had determined that no further treatment was necessary. But, for reasons not apparent in the record, Tekton then reversed its position and authorized Bloom to treat with another physician. Tekton wrote Bloom a letter indicating that because Dr. Kralick would not see Bloom without a referral, and because Dr. Gevaert was "no longer available," it would authorize a change of physician for any physician but Dr. Ferris, the doctor Bloom wished to see. Tekton also authorized an MRI exam, but required that Bloom first select a physician acceptable to Tekton.

At the board hearing on December 17, 1997, Bloom argued that he should be allowed to substitute a new doctor because both Dr. Kralick and Dr. Gevaert were unwilling or unavailable to treat him. The board denied Bloom's request, and he appealed to the superior court. The superior court upheld the board's decision, and Bloom now appeals to this court.

### III. DISCUSSION

#### A. Standard of Review

▮▮▮ This court does not defer to the superior court when it acts as an intermediate court of appeal; instead, we review independently the decisions of administrative agencies.[2] We review agency findings under a "substantial evidence" standard, asking whether those findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] We review questions of law under the independent judgment standard, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

#### B. Did the Board Err in Refusing to Allow Bloom to Change Treating Physicians Without Tekton's Approval?

The Alaska Workers' Compensation Act gives each injured worker the right to choose an attending physician.[5] But in order to curb potential abuse—especially doctor shopping—the Act allows an injured worker to change attending physicians only once without the consent of the employer.[6]

---

**2.** See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).

**3.** Bockness v. Brown Jug, Inc., 980 P.2d 462, 465 (Alaska 1999) (quoting Grove v. Alaska Constr. and Erectors, 948 P.2d 454, 456 (Alaska 1997)).

**4.** Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**5.** AS 23.30.095(a) provides, in pertinent part:
   When medical care is required, the injured employee may designate a licensed physician

to provide all medical and related benefits. The employee may not make more than one change in the employee's choice of attending physician without the written consent of the employer. Referral to a specialist by the employee's attending physician is not considered a change in physicians.

**6.** See id.; see generally Liberty Northwest Ins. Corp. v. Vasquez, 147 Or.App. 704, 938 P.2d 237, 238–39 (1997) (holding "that the specific purpose of the [Oregon workers' compensation stat-

In order to protect the injured worker's right to choose his attending physician, the Alaska Workers' Compensation Board has consistently interpreted the statute to allow an employee to "substitute" a new physician in circumstances where the current attending physician is either unwilling[7] or unable to continue providing care.[8] These "substitutions" do not count as changes in attending physicians: even a worker who has already changed doctors may choose a new attending physician without the employer's consent if the current physician becomes unwilling or unavailable to treat.[9] Moreover, when an attending physician refers a worker to a specialist, the worker may see the referral physician without running afoul of the statute's one-change rule.[10]

Allowing an employee to substitute attending physicians when the employee's current physician becomes unwilling or unavailable to treat is consistent with the well-settled rule that under AS 23.30.095(a) an injured worker is presumed entitled to continuing medical treatment.[11] The substitution policy ensures that the employee's right to continuing care

by a physician of his choice will not be impeded by circumstances beyond the employee's control.

Turning to the case at hand, the record shows that Bloom exercised his option to change attending physicians when he switched from Dr. Horton to Dr. Kralick after his first back surgery failed. The uncontroverted evidence shows that Dr. Kralick was Bloom's last attending physician. The record also shows that Dr. Kralick's office policy was to see patients, even former patients, only if they were referred for surgery by another doctor.

By instructing Bloom that he could not schedule an appointment without a new referral, Dr. Kralick was refusing to treat. Consequently, when Bloom learned that Dr. Kralick would not see him without a new referral, Bloom could have simply notified Tekton that he intended to select a new attending physician. There can be no dispute that, under the board's longstanding policy, Dr. Kralick's refusal to treat gave Bloom the right to select a new attending

ute's limit] on changing physicians was to prevent doctor shopping").

7. See Clymer v. Wilton Adjustment Servs., AWCB Decision No. 95–0068 (March 10, 1995) (Attending physician felt patient was not good candidate for surgery, and did not want to undertake new course of treatment recommended by another doctor. The board held that patient could substitute new doctor after attending physician "refused to treat.").

8. See Stempniak v. Pioneer Alaskan Fisheries, Inc., AWCB Decision No. 95–0012 (Feb. 7, 1995) (holding that patient could substitute doctor in Homer, where he lived, for his doctor in Anchorage without this amounting to "change" in attending physicians for purposes of AS 23.30.095).

The board recently promulgated a regulation, 8 Alaska Administrative Code (AAC) 45.082 (1999), providing that if the attending physician dies, moves the physician's practice 50 miles or more from the employee, or refuses to treat the employee, the employee may substitute a physician and it will not be considered a change of attending physicians. See 8 AAC 45.082(c)(4)(B). While this regulation does not apply to the case at hand because it was promulgated after the board rendered the decision now under review, it is persuasive to the degree that it embodies the

board's established policy of allowing employees to freely substitute attending physicians in circumstances where it is clear that employees are not engaged in doctor shopping, and where factors outside of the employees' control have rendered it impossible for them to receive care from their chosen physicians.

9. Other states have adopted similar approaches. See Baker v. Davison Transp., 643 So.2d 278, 282 (La.App.1994) (holding that employee was free to choose another doctor when he was not given opportunity to treat with his first choice); Morgan v. New Orleans Cold Storage, 603 So.2d 190, 192 (La.App.1992) (holding that employee was free to select new doctor where doctor first chosen by the employee "refused to treat him"); see also TEC v. Underwood, 33 Ark.App. 116, 802 S.W.2d 481, 484 (1991) (overruled on other grounds by Metro Temporaries v. Boyd, 314 Ark. 479, 863 S.W.2d 316 (1993)) (holding that employee was permitted to change doctors without the Arkansas Workers' Compensation Commission's approval when she moved to a new town, even though the statute required approval for all changes).

10. See AS 23.30.095(a).

11. See Municipality of Anchorage v. Carter, 818 P.2d 661, 665 (Alaska 1991).

physician of his choice without Tekton's consent.[12]

But instead of choosing a new attending physician, Bloom followed Dr. Kralick's referral and saw Dr. Gevaert. The board specifically acknowledged that "[b]ecause of [Dr. Kralick's] referral, ... Dr. Gevaert was not an attending physician." [13] Yet despite this finding the board accepted as binding Dr. Gevaert's conclusion that Bloom did not need further treatment: "[T]he employee asked for a profession[al] medical opinion from Dr. Gevaert and he got it. Because of this, we find the employee was not affected by outside events which would raise any fairness questions." The board thus ruled that mere dissatisfaction with Dr. Gevaert's treatment did not entitle Bloom to choose a new attending physician without Tekton's consent.

But because Dr. Gevaert was not Bloom's attending physician, his conclusions do not determine Bloom's right to name a new attending physician. Notably, Tekton does not now contend, nor did it contend below, that Bloom requires no further treatment. To the contrary, Tekton acknowledged that Bloom required continuing care, and authorized him to see another physician acceptable to Tekton. Yet Bloom had no attending physician who was willing to treat him.

Under these circumstances, AS 23.30.095(a) gave Bloom the right to name a new attending physician. Because he had seen Dr. Gevaert by referral rather than as an attending physician, Bloom's reasons for wanting a different physician are immaterial. When a worker's attending physician becomes unwilling or unable to continue care, concerns over the possibility of doctor shopping assume secondary importance and cannot override the statute's primary purpose of allowing injured workers to choose their attending physicians—a purpose best served by allowing the worker to freely substitute a new attending physician.

## IV. CONCLUSION

Because Bloom was improperly denied his right to choose a new attending physician, we REVERSE the board's decision and REMAND for further proceedings consistent with this opinion.

MATTHEWS, Chief Justice, not participating.

---

12. *See Clymer v. Wilton Adjustment Servs.*, AWCB Decision No. 95–0068 (March 10, 1995); *see also Paluck v. Wise Enters.*, AWCB Decision No. 89–0341 (December 28, 1989); 8 AAC 45.082(c)(4)(B) (1999).

13. *See* AS 23.30.095(a).