TEC and Commercial Union Insurance Companies *v.*
Michelle T. UNDERWOOD

CA 90-242                                               802 S.W.2d 481

Court of Appeals of Arkansas
En Banc
Opinion delivered January 30, 1991

*Daily, West, Core, Coffman & Canfield*, by: *Eldon F. Coffman* and *Douglas M. Carson*, for appellant.

*Eddie H. Walker, Jr.*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Workers' Compensation Commission.

Appellee Michelle Underwood was employed by TEC, which the opinion of the administrative law judge stated was "a temporary employment company." On May 21, 1987, while on a work assignment at Baldor Electric in Fort Smith, Arkansas, Ms. Underwood suffered an admittedly compensable injury to her lower back. She was paid temporary total disability benefits of $95.81 per week from May 21, 1987, through July 17, 1987, when she was released to go back to work.

At the hearing before the administrative law judge, the appellee contended that the proper compensation rate was $146.67 per week and that she was entitled to additional medical treatment. The appellants controverted the difference in the rate at which compensation was paid and the rate claimed by appellee and contended that all unpaid medical expense was unauthorized and therefore not their responsibility. The administrative law judge held appellee's proper compensation rate was $146.67 and that the appellants were liable for the unpaid medical treatment. The Commission affirmed and adopted the opinion of the law judge.

The appellee testified she was employed by TEC in February 1987 and assigned to work the "3:30 to midnight shift" at Calvert-McBride where she earned $3.50 per hour and worked 40 hours per week. Appellee testified she told the TEC employee who hired her that she liked Calvert-McBride, but didn't like the hours, and if something came open with better hours to "keep me in mind for it." Appellee said that toward the end of April she was told TEC had an opening at Baldor and was asked if she wanted it. Appellee testified she was told the hours were 2:00 p.m. to 10:00 p.m. daily and that she would be making $5.50 per hour. Appellee

testified further that she worked at Baldor "at least three weeks, closer to a month" and "[a]s far as I recall, I was getting 40 hours a week and I was getting $5.50 an hour."

The appellants argue that the Commission erroneously determined appellee's compensation rate by refusing to consider either her actual work schedule or the actual wages earned. Appellants contend the Commission ignored the plain language of the Arkansas Workers' Compensation Act. In support of this argument they rely upon the following portions of Ark. Code Ann. § 11-9-518 (1987):

> (a)(1) Compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment.
>
> . . . .
>
> (c) If, because of exceptional circumstances, the average weekly wage cannot be fairly and justly determined by the above formulas, the commission may determine the average weekly wage by a method that is just and fair to all parties concerned.

Appellants contend that employees of TEC are assigned from work place to work place, while still remaining an employee of TEC, and these employees "commonly exercise much more flexibility in their job schedules than the typical 'full-time' employee." It is argued that the appellee here worked a full 40-hour week only "two of her seven weeks" at Baldor, and the Commission should have used the actual hours she worked there instead of treating her as full-time employee. Appellants also argue that the Commission should have used a wage rate based on her employment at both Calvert-McBride and Baldor. In short, appellants contend the Commission should have used some other formula—one which would be "fair and just" under Ark. Code Ann. § 11-9-518(c), *supra*.

Much of appellants' argument is based upon what they contend is a payroll record which they offered into evidence but which the law judge refused to admit because it was not properly identified and authenticated. Appellants, however, argue that

this does not matter because the "record" was shown to appellee on cross-examination and she admitted it was correct. Actually, the appellee was asked: "Are you saying this is not correct?" Her answer was: "I am not saying that's not correct. I'm saying as far as I remember I worked 40 hours." Appellee went on to explain that she was assigned to work at Baldor 40 hours a week at $5.50 per hour; that she worked at Baldor "at least three weeks, closer to a month when I got hurt"; that possibly during her employment she could have missed a couple of hours; and that she probably did work only eight hours one week because she was going to school and had final exams that week, but the rest of the weeks she worked 40 hours a week at Baldor.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Company* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

Arkansas Code Annotated § 11-9-519 (1987) provides that in cases of total disability, the injured employee shall be paid during the continuance of the total disability, compensation equal to 66 ⅔% of his average weekly wage. Section 11-9-518(a)(1), *supra*, provides compensation shall be computed upon the average weekly wage earned by the employee under the "contract of hire in force at the time of the accident" and in no case shall be computed on less than a "full-time work-week" in the employment.

We think there is substantial evidence to support the Commission's finding that appellee's compensation rate was $146.67 (based upon an average weekly wage of $5.50 per hour for 40 hours), and we cannot say that the evidence shows such exceptional circumstances that the Commission's determination was not "just and fair" to the appellants.

Appellants also argue that the Commission erred in ordering

them to pay the medical bills of Dr. Mertz. Appellee had been treated by Dr. Wolfe in Fort Smith and subsequently married and moved to Stillwater, Oklahoma. Without obtaining the approval of the Commission or agreement by appellants, the appellee began seeing Dr. Mertz in Oklahoma. Appellants argue they are not responsible for charges for care provided by or ordered by Dr. Mertz because appellee failed to request permission for a change of physician, the treatment received was not "emergency treatment," and the Commission has no authority to retroactively approve a change of physician. In support of this argument appellants cite *Wright Contracting Company* v. *Randall*, 12 Ark. App. 358, 676 S.W.2d 750 (1984), and *American Transportation Company* v. *Payne*, 10 Ark. App. 56, 661 S.W.2d 418 (1983), where we held the Commission no longer had the discretion to retroactively approve a change of physicians and absent compliance with the statute, the employer was not liable for a new physician's services.

However, these cases have no application here because Dr. Mertz's treatment was a "referral" rather than a "change of physician." Appellee testified that she had telephoned the office of Dr. Wolfe and asked for a referral "over there," that she was told "they" would talk to Dr. Wolfe and he would refer her to someone; that she was given the name of Dr. Mertz; that Dr. Wolfe sent her "records and everything to Dr. Mertz and let him know that I was going to be seeing him." The record also contains a letter from Dr. Mertz to Dr. Wolfe thanking him for referring appellee. The law judge held that appellee's request for a referral was not "doctor shopping under the circumstances." The full Commission made the same factual determination and adopted the law judge's finding. We think the Commission's decision is supported by substantial evidence and the law. *See Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985).

Affirmed.