# DEPARTMENT OF PARKS & TOURISM *v.*
## Belinda Gail HELMS

CA 97-653                                           959 S.W.2d 749

Court of Appeals of Arkansas
Division II
Opinion delivered January 14, 1998

*Nathan C. Culp*, for appellants.

*Everett O. Martindale*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Department of Parks and Tourism appeals the decision of the Workers' Compensation Commission that found that appellee Belinda Gail Helms was properly referred to a chiropractor and then to a general practitioner by her treating physician. It argues that this was not supported by substantial evidence. Appellant also argues that the impairment rating to the body as a whole was not based on objective and measurable findings, taking issue with appellee's range-of-motion tests. Though we find no merit to the Department's

arguments regarding the referrals, we do find merit in its disagreement with the award of a permanent partial disability.

Appellee was injured on April 23, 1995, when she slipped and fell while performing duties as a waitress at DeGray Lodge. Appellant admitted compensability. She was initially treated at an Arkadelphia hospital for shoulder, lower back, and head pain. She was followed up two days later by Dr. Jensen, a general practitioner, with her only complaint being shoulder pain. She was seen again on May 9th when Dr. Jensen referred appellee to an orthopedist, Dr. McLeod. He pursued conservative treatment of appellee's injury. Upon suggestion of Dr. McLeod, appellee underwent six sessions of physical therapy between May and June 1995. On June 7th, appellee cancelled her remaining physical therapy sessions and sought chiropractic treatment. She underwent those treatments for several months.

She returned to see the orthopedist in September 1995 complaining of headaches. Because he did not treat headaches, she was referred to Dr. Taylor, a general practitioner. She returned to the orthopedist on March 8, 1996, for a permanent impairment evaluation, and was assessed a four-percent impairment rating based on the results of active range-of-motion tests. The Department denied the compensability of the chiropractic and general practitioner treatment as well as the four-percent rating. The administrative law judge determined that the referrals and treatments were reasonable and necessary and that the rating was appropriate. The Full Commission affirmed the decision of the administrative law judge. This appeal resulted.

The first argument centers primarily on whether appellee consulted the chiropractor on her own or whether she was referred to him by her orthopedist. In his deposition her orthopedist explained that, in his estimation, appellee could have understood his discussions with her to mean that he was referring her to a chiropractor. They had discussed the topic of chiropractic treatment in her May 1995 visit, before physical therapy had begun. His practice was to advise patients of alternative treatments, which include chiropractic treatment. Dr. McLeod had been to Dr. Clary's and Dr. Schuck's offices, both local chiropractors, and

mentioned their names to appellee. Dr. McLeod stated that there are business cards of Dr. Clary's in Dr. McLeod's office.

Appellee testified that she returned to Dr. McLeod's office because physical therapy was not providing her any relief. At the front desk, she mentioned to the receptionist that she was interested in seeking chiropractic treatment like Dr. McLeod had mentioned. The receptionist went to the back, and later returned and wrote Dr. Clary's name and address on a piece of paper for her. The receptionist mentioned to appellee that Dr. Clary was new in town and had unique methods of treatment. Though the receptionist testified that she did not receive instructions from Dr. McLeod to send appellee to the chiropractor, appellee was left with the impression that he did. Dr. McLeod stated that her subjective understanding could have been that she was referred to a chiropractor, because of the circumstances under which appellee was given the name of Dr. Clary. Dr. Clary even corresponded back to Dr. McLeod thanking him for the "referral" of appellee.

■ ■ Whether treatment is a result of a "referral" rather than a "change of physician" is a factual determination to be made by the Commission. *Pennington v. Gene Cosby Floor & Carpet*, 51 Ark. App. 128, 911 S.W.2d 600 (1995); *TEC v. Underwood*, 33 Ark. App. 116, 802 S.W.2d 481 (1991). When that determination is challenged on appeal, we affirm if it is supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Unless we are convinced that fair-minded persons with the same facts could not arrive at the conclusion reached by the Commission, we will affirm. *Id.*; *Tuberville v. International Paper Co.*, 28 Ark. App. 196, 771 S.W.2d 805 (1989). Here, the Commission could reasonably find that appellee was not physician-shopping but was seeking assistance in following through with an option discussed by Dr. McLeod.

■ Further evidence was presented to this effect. In the patient information sheet that she filled out at Dr. Clary's office, she responded to a question, "How did you hear about us?" with the answer, "Recommended by Dr. McLeod." In response to the question, "If referred, by who?" she answered Dr. McLeod. The

Commission was persuaded by appellee's credible testimony, coupled with Dr. McLeod's explanation of the situation. We cannot say that there was no substantial evidence to support the Commission's decision.

■ ■ The second physician whose services appellant takes issue with is Dr. Taylor. Appellee sought the care of Dr. Taylor after a consultation with Dr. McLeod in September 1995. On that visit, she complained to Dr. McLeod of headaches. Dr. McLeod stated in his deposition that he was not qualified to render opinions and treatment for headaches. At Dr. McLeod's suggestion she saw Dr. Taylor, a family physician. Dr. McLeod testified that "[S]he told me about she'd been having some headaches. And I don't treat headaches, and I wanted her to have that looked at, and asked her about a family physician." He went on to state that she had seen Dr. Jensen and that a couple of her family members had seen Dr. Taylor. She expressed confidence in Dr. Taylor to Dr. McLeod, "so we made a referral for her to see Dr. Taylor for evaluation of these headaches." A patient's mere request for treatment by a particular physician is not in itself sufficient to invalidate an otherwise valid referral. *Electro-Air v. Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985); *see also, Patrick v. Arkansas Oak Flooring Co.*, 39 Ark. App. 34, 833 S.W.2d 869 (1992). In his office notes, Dr. McLeod mentioned that appellee did not want to see any doctor other than Dr. Taylor for the headaches. The doctor explained that in their discussions, appellee or her husband brought up Dr. Taylor. Nothing negative was stated about Dr. Jensen; they just appeared comfortable with Dr. Taylor as a physician. The Commission was well within the substantial-evidence requirement in finding that this was a valid referral and not a demand by appellee for a change of physician.

■ ■ Lastly, appellant argues that the four-percent impairment rating assessed by Dr. McLeod on March 8, 1996, is invalid because Dr. McLeod used active range-of-motion tests that do not qualify as "objective and measurable" under the Workers' Compensation Act. Appellant asserts that any impairment rating attributable to appellee's right shoulder injury cannot be predicated on active range-of-motion tests. Dr. McLeod gave appellee a seven-percent shoulder impairment pursuant to the American

Medical Association Guidelines, which correlates to a four-per-cent impairment to the body as a whole. Arkansas Code Annotated § 11-9-102(16)(A)(ii) (Repl. 1996) states:

> When determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain; for the purpose of making physical or anatomical impairment ratings to the spine, straight-leg-raising tests or range-of-motion tests shall not be considered objective findings.

This was not an evaluation of spine impairment. However, appellee did bear the burden to prove physical or anatomical impairment by objective and measurable physical findings. Ark. Code Ann. § 11-9-704(C)(1)(B) (Repl. 1996). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 1996). Dr. McLeod stated that he based the impairment rating on active range-of-motion tests. The legislature has eliminated range-of-motion tests as a basis for physical or anatomical impairment ratings to the spine *by definition.* It was incumbent upon appellee to present evidence that active range-of-motion tests are objective tests. In other words, it was incumbent upon her to present proof that those tests do not come under the voluntary control of the patient. She did not do so. In fact, there is authority to suggest that active range-of-motion tests are based almost entirely on the patient's cooperation and effort. *See* American Medical Association, *Guidelines to the Evaluation of Permanent Impairment,* (3d ed. 1988). "The full range possible of active motion should be carried out by the subject and measured by the examiner. If a joint cannot be moved actively by the subject or passively by the examiner, the position of ankylosis should be recorded." *Id.* at 14. Because appellee did not present any objective physical findings to support the percentage of impairment to the body as a whole, we cannot uphold the Commission's decision on this point since it does not provide a substantial basis for its award.

Affirmed in part; reversed in part.

BIRD and GRIFFEN, JJ., agree.