Eddie BRAY *v.* INTERNATIONAL WIRE GROUP
and General Accident of America

CA 05-1125                                         235 S.W.3d 548

Court of Appeals of Arkansas
Opinion delivered May 10, 2006

*Baim, Gunti, Mouser & Havner, PLC* by: *Michael W. Boyd*, for appellant.

*Michael Ryburn*, for appellee.

ANDREE LAYTON ROAF, Judge. On January 2, 2001, appellant Eddie Bray sustained a compensable back injury for which he had surgery in May 2001. This claim has been the subject of a previous hearing in April 2002, when appellees International Wire Group (IWG) and General Accident of America (GAA) denied the claim after allowing Bray only one visit to the company doctor. The injury was found to be compensable, and IWG and GAA were directed by the administrative law judge (ALJ) in a June 2002 opinion to pay medical expenses and temporary total disability (TTD) benefits for two different time periods ending on February 7, 2002. Sometime later in 2002, IWG and GAA stopped paying medical benefits associated with Bray's visits to his regular physician, Dr. Toni Middleton, this time on the basis that Dr. Middleton was not an authorized treating physician. Bray challenged the appellees on the refusal to pay further benefits; discovery was conducted during 2003; and a hearing was ultimately held before the ALJ on June 18, 2004. The ALJ found that Dr. Middleton was not an authorized physician, that Bray was not entitled to additional temporary total disability benefits, and that Bray was not entitled to attorney's fees. The Commission affirmed and adopted the decision of the ALJ. On appeal, Bray asserts that the Commission's decision is not supported by substantial evidence. We reverse in part and affirm in part.

During the course of litigating his original claim, Bray received treatment from his general practitioner, Dr. Middleton. Dr. Middleton treated him for his back problems and referred him to Dr. P.B. Simpson, a specialist. Dr. Simpson performed surgery on Bray in May 2001 and eventually assigned him a fifteen-percent anatomical impairment rating. Dr. Simpson initially released Bray to be seen on an as-needed basis as of February 6, 2002. Dr. Simpson also saw Bray on January 31, 2003, and again instructed Bray to return to him on an "as-needed basis." Dr. Simpson noted in his 2003 report that Bray wanted pain medication, but Dr. Simpson stated that he would "let his regular physician take care of that."

After he was awarded benefits on his original claim in 2002, according to Bray, he contacted the insurance carrier about seeing Dr. Middleton and getting prescriptions. He testified that he was directed to Donna "Tuttie" Criswell, a new adjuster handling his file. He stated that he spoke with "Tuttie" on three or four occasions in an attempt to get his prescriptions filled and to see Dr. Middleton. According to Bray, in his first conversation with her,

Criswell gave him a number to take to the pharmacy to get his medication. Bray informed Criswell that Dr. Simpson had released him with instructions to follow up with pain management with his regular physician. Bray testified that Criswell told him to see his regular physician as Dr. Simpson had recommended. Criswell testified that she only had Bray's file for about a month, that she did not remember ever having a conversation with Bray, and further stated that she never told him to see his regular physician. Criswell acknowledged, however, that she did go by the nickname "Tuttie."

Bray requested a hearing to determine his entitlement to payment of medical expenses related to his visits to Dr. Middleton, temporary total disability benefits, and attorney's fees. The ALJ found in an opinion filed September 16, 2004, that Dr. Middleton was unauthorized and that Bray's healing period had ended when Dr. Simpson initially released him in 2002. Thus, the ALJ ruled that Bray was not entitled to additional medical expenses or to additional temporary disability benefits and that he was not entitled to attorney's fees. The Commission adopted the decision of the ALJ.

The well-settled standard of review for workers' compensation cases is as follows:

> This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 4-5, 69 S.W.3d 899, 902 (2002). Further, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Estridge v. Waste Mgmt.*, 343 Ark. 276, 33 S.W.3d 167 (2000).

*Poulan Weed Eater v. Marshall,* 79 Ark. App. 129, 133–34, 84 S.W.3d 878, 881 (2002).

For his first point on appeal, Bray argues that the Commission's decision that he is not entitled to additional medical expenses and additional temporary disability benefits because Dr. Middleton was not an authorized treating physician is not supported by substantial evidence. Bray specifically asserts that Dr. Middleton was authorized to treat him because Dr. Simpson referred him back to Dr. Middleton and because Dr. Middleton was his initial treating physician. IWG and GAA do not contest the reasonableness or necessity of Dr. Middleton's treatment. Arkansas Code Annotated section 9-11-514(b) (Repl. 2002) states that treatment by a physician other than the claimant's authorized physician shall be at the claimant's expense. This section, however, is inapplicable if the authorized treating physician refers the claimant to another doctor for examination or treatment. *Am. Greetings Corp. v. Garey,* 61 Ark. App. 18, 963 S.W.2d 613 (1998). Whether treatment is a result of a "referral" rather than a "change of physician" is a factual determination for the Commission. *Dep't of Parks & Tourism v. Helms,* 60 Ark. App. 110, 959 S.W.2d 749 (1998); *Patrick v. Ark. Oak Flooring Co.,* 39 Ark. App. 34, 833 S.W.2d 790 (1992). When that determination is challenged on appeal, this court will affirm if it is supported by substantial evidence. *Helms, supra.*

The Commission's opinion focuses on its finding that there is no evidence that Bray received permission from the insurance carrier to change physicians. Bray, however, clearly asserts that he did not attempt to exercise his right to a one-time change of physician under Ark. Code Ann. § 11-9-514. Instead, Bray argues that Dr. Simpson referred him to Dr. Middleton, or in the alternative, that Dr. Middleton remained authorized as his initial treating family physician.

Bray first saw Dr. Middleton, a general practitioner, after his initial injury. Dr. Middleton was the physician who originally ordered diagnostic testing and then referred Bray to Dr. Simpson, the specialist who performed surgery on Bray's back. The ALJ recognized Dr. Middleton as a treating physician in the 2002 opinion regarding the original award; this decision was issued in June 2002, after Dr. Simpson's first release letter was issued in February 2002. On January 31, 2003, Dr. Simpson again recorded in his notes that he was discharging Bray from his care and would see him back on an as-needed basis. Dr. Simpson also noted that

Bray wanted pain medication but that he would "let [Bray's] regular physician take care of that." The situation presently before this court is a treating specialist releasing his patient and referring him back to his original treating physician, who was authorized to treat him.

■ Dr. Middleton was Bray's original treating physician, and there is nothing in the record or the various decisions of the ALJ and Commission that states or even suggests that he did not remain an authorized physician throughout this case. Bray saw Dr. Middleton after IWG and GAA controverted his original claim. In the first decision of this case, the ALJ found the claim to be compensable and ordered IWG and GAA to pay Bray's medical bills, including bills from Dr. Middleton. Dr. Middleton was and remains an authorized treating physician in this case.

■ For his second point on appeal, Bray argues that the Commission erred when it found that he was not entitled to additional total temporary disability benefits because the decision is not supported by substantial evidence. He asserts that he was entitled to additional TTD benefits pursuant to Dr. Middleton's findings. Bray presented off-work slips by Dr. Middleton indicating that he should remain off work for a certain time. In the original opinion, the ALJ decided that TTD benefits should be paid through February 7, 2002. Bray was also given a fifteen-percent anatomical impairment rating. Bray did not appeal this decision. Bray now asserts that he has entered a new healing period based on the off-work slips from Dr. Middleton and a report dated June 15, 2004. There is no indication, however, that Bray's condition has materially changed in any way or that he has entered into a new healing period. When the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition, the healing period for which the claimant is entitled to TTD benefits has ended. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). Dr. Middleton's report does not suggest any further treatment that might improve Bray's condition. Dr. Simpson, noting in his report that he could not find anything significantly wrong with him, released Bray from his care and referred him to his regular physician for pain management. The persistence of pain is not sufficient in itself to extend the healing period. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). Thus, the

Commission's decision that Bray is not entitled to additional TTD benefits is supported by substantial evidence.

█ Finally, Bray argues that the Commission's decision that he is not entitled to attorney's fees and costs related to his motion to compel is not supported by substantial evidence. At a deposition on January 15, 2003, Bray's counsel hand-delivered discovery to IWG and GAA's counsel, asking for telephone logs to confirm Bray's assertion that he contacted the adjuster about seeing Dr. Middleton. IWG and GAA did not turn over the logs but answered that there were no such conversations noted in the telephone logs. Bray filed a motion to compel. A hearing was held on this matter, and IWG and GAA were ordered to provide those logs to the Bray with certain restrictions. The logs did not confirm Bray's assertions. Bray asserts that he is entitled to attorney's fees and costs related to his motion to compel because IWG and GAA were wrongfully withholding relevant information. There was no evidence in the record regarding the costs incurred by Bray concerning the hearing on the motion to compel. We do not decide whether the ALJ lacked the authority to award attorney's fees and costs as the Commission's opinion notes, but we do hold that, in this case, substantial evidence supports the Commission's decision not to award attorney's fees and costs relating to the motion to compel.

Reversed in part; affirmed in part.

HART and VAUGHT, JJ., agree.